ROBERT E. PEOPLES, EMPLOYEE v. CONE MILLS CORPORATION, EMPLOYER, SELF-INSURER

No. 8310IC183

(Filed 3 July 1984)

Master and Servant § 68— occupational disease—sufficiency of evidence of total disability

　　The medical evidence in a workers' compensation proceeding was sufficient for the Industrial Commission to find that plaintiff was totally and permanently disabled within the meaning of G.S. 97-2(9), and defendant's offer of continued "employment" at equal or better wages was not conclusive on this issue.

　　Judge WELLS concurring.

　　Judge HEDRICK joins in this concurring opinion.

APPEAL by defendant from the Opinion and Award of the North Carolina Industrial Commission. Opinion and Award entered 28 October 1982 and amended 3 November 1982. Heard in the Court of Appeals 19 January 1984.

This workers' compensation action based on total permanent disability resulting from an occupational disease was instituted in 1978 with the Industrial Commission. Plaintiff alleged that he was disabled due to byssinosis. A hearing was held on 17 July 1979. Witnesses at this hearing were the plaintiff, Dr. Thomas K. White, a psychologist qualified as an expert in vocational rehabilitation and job skills, and Randolph Stevenson, personnel manager with Cone Mills at the plant where plaintiff worked. Thereafter, depositions were taken from Doctors Mario Battigelli and George Kilpatrick, physicians specializing in pulmonary diseases who were members of the Industrial Commission panel on occupational diseases.

On 14 January 1980, the deputy commissioner entered an Opinion and Award the essential findings of which are quoted in part below:

2. . . . Plaintiff began in 1955 his employment with defendant employer as a stitcher operator for 5 to 6 weeks in the cloth room while on probation. Then he worked in the card room as an overhaul mechanical helper before being promoted to boiler fixer and emergency mechanic in the card room. Plaintiff then became an overhauler and finally a card room supervisor, initially with responsibility for manual labor, but for the last 4 to 5 years, he worked in a strictly supervisory capacity with authority over a number of machines and employees. Plaintiff's last 4 days of employment at the mill was in the supply room.

. . .

5. Plaintiff's breathing problems caused him difficulty at work in his supervisory capacity in that he could talk for only limited periods, he could not make patrol rounds and his supervisor instructed him to stay on the floor, where the dust bothered him, and not in the office which was air-conditioned. Due to his breathing problems, plaintiff had been placed on leave of absence status on three occasions by Dr. Kilpatrick during which time he received full wages.

6. Plaintiff was transferred from his supervisory position in the card room to supply room employee in order that he could avoid cotton dust exposure at the doctor's recommenda-

tion. He was initially offered this position on a temporary basis until December 31, 1978 when he was to be given the same considerations as other employees in this classification for job placement and lay-off procedures. Plaintiff was to continue at his same salary level while in the supply room and in fact, was paid this full salary until the end of February, 1979. The supply room was approximately 75 feet by 125 feet with numerous storage bins and cabinets for mechanical parts. He was the only employee on the third shift, which normally had a lighter work load than the other shifts. Plaintiff filled machine parts orders which he received at two locations, from a dumbwaiter from the weave room and from a window counter. He lifted parts ranging in weight from two to three ounces to fifty pounds in filling these orders. During lulls between orders, he took inventory, handled incoming parts and swept the floor to remove the bothersome dust which filtered down from the flows above and from the elevator shaft and stairway. His work involved bending, stooping, lifting, and reaching, and by inference, walking.

Plaintiff was able to work in this position four hours on each of four days until October 5, 1978. Due to increased breathing problems, plaintiff was immediately hospitalized fifteen days and has not since returned to work, or earned wages.

7. Plaintiff is currently plagued with persistent shortness of breath, constant weakness and coughing. He has difficulty resting, walking on level ground, dressing and showering due to these breathing problems.

. . .

[Findings 9 and 10 concern the diagnoses of Doctors Battigelli and Kilpatrick as to the cause and extent of plaintiff's disability.]

. . .

11. The defendant employer has continued to offer to plaintiff the supply room position which they describe as follows:

1. The environment was lint and dust free;

2. The lifting or physical exertion requirements were as light in this position as any other place in the plant;

3. This position is currently being occupied by a female employee on other shifts, and this position is traditionally held by a female employee;

4. At the time Mr. Peoples was offered this job, he was informed that it would not require any reduction in his current salary;

5. The volume of work in this position is not great, and it would not be unusual for as much as an hour to pass at this job when there were no requests for orders to be filled;

6. Mr. Peoples would not be required to lift any objects that he did not feel he would be able to lift or move.

12. Both physicians were of the opinion that plaintiff was capable of tolerating a sedentary type job, under such conditions as the defendant employer described as applicable to the supply room position. However, both felt that either the presence in the supply room of even minimal dust from extraneous sources or a moderate amount of moving about to carry parts to fill orders would render the offered job unsuitable and undesirable employment for plaintiff.

. . .

14. The supply room conditions, in actuality, are not those as described by the defendant employer in that there is dust present in the supply room which is bothersome to the plaintiff. To say that the room is air conditioned is not to say that the air is filtered. Additionally, the plaintiff did and would have to more [sic] about to fill orders. Even if he was required only to lift parts he felt capable of lifting, there most probably would be occasions when an order is placed via the dumbwaiter when no one else is present, especially considering that he would be the only employee hired on that shift. Obviously, some movement is required to locate parts in a room of this size. The job offered, in fact, is not totally sedentary. In addition, a female has not traditionally held a similar position to the one offered plaintiff at the Edna plant, though currently one is employed in the supply room.

The deputy commissioner concluded that plaintiff had contracted byssinosis, that he had a permanent partial disability of 66 2/3%, and entered an award based on these conclusions. The deputy commissioner also concluded:

> 3. In refusing to accept the defendant employer's offer of a position in the supply room, plaintiff is justified in that the job's actual physical requirements, though limited, exceed plaintiff's physical capacity and the environmental conditions, though more suitable than the cardroom, endanger plaintiff's health. G.S. 97-32.

Both parties gave notice of appeal to the full Industrial Commission. Defendant's contention there was that the deputy commissioner's findings and conclusions regarding the supply room job offered to plaintiff and his physical inability to perform that job lacked evidentiary and factual support. Defendant also contended that there was no factual basis for the conclusion that plaintiff was disabled.

Plaintiff's contention was that the evidence compelled findings and conclusions that plaintiff was permanently and totally disabled by byssinosis and that the deputy commissioner's finding of partial disability was erroneous.

After reviewing the case, the full Commission on 30 October 1980 ordered that a hygiene survey be performed to determine the "atmospheric content of the work environment," i.e., whether it was dusty. The deposition and technical report of Melvin Witcher, the Department of Human Resources employee who performed the survey, were made part of the record before the Commission. Likewise, the depositions of Dr. Kilpatrick and Randolph Stevenson and the testimony of Dr. Battigelli, taken at a hearing held on 6 January 1982, were included in the record. On 28 October 1982, the full Commission entered an opinion and award in which it adopted the first eleven findings of fact from the opinion and award of the deputy commissioner (set forth in pertinent part above) and made the following additional findings of fact:

> 12. Plaintiff's pulmonary condition, from a clinical point of view, has remained about the same to slightly worse since August of 1979. According to Dr. Kilpatrick, who has con-

tinued to treat the plaintiff, his arterial blood gases have shown some deterioration as is usually associated with episodes of acute and chronic bronchitis. Plaintiff also had a symptomatic progression of chest pain until July of 1981.

. . .

15. In accordance with the October 30, 1980 Order by Chairman Stephenson for the Full Commission, a dust exposure level evaluation of the supply room at the defendant-employer's Edna Plant was performed on December 16 and 17, 1980, by Melvin R. Witcher, Jr., an Industrial Hygiene Consultant for the Department of Human Resources, Division of Health Services, Occupational Health Branch. Measured over a five-hour period during the plant's first shift on December 17, 1980, the supply room's dust levels ranged from 90 to 98 micrograms per cubic meter of air, well below the OSHA permissible exposure limit of 500 micrograms per cubic meter of air for this particular area of the plant. Based on these results, Mr. Witcher did not feel that supply room employees would experience significant cotton dust exposure. However, he did subsequently state, by way of deposition, that visible dust would not have been sampled because it settles out of the measuring devices (vertical elutriators), and that he made no qualitative evaluation of the dust present in the supply room.

16. Dr. Kilpatrick's ultimate opinion was that plaintiff would not be able to work in the supply room although he felt that the plaintiff might be able to simply sit there. This opinion was based on what Dr. Kilpatrick felt was plaintiff's "total inability to work on any job that requires physical exertion," even constant walking, and which also might expose him to dust, both cotton and ordinary, in quantities sufficient to aggravate his health and endanger him.

17. Dr. Battigelli expressed his opinion as to an anticipated negative physical and emotional reaction by the plaintiff to the position offered. Dr. Battigelli reaffirmed his earlier statement that cotton dust exposure, as well as exposure to any irritant, would deteriorate the plaintiff's physical condition, unequivocally. In addition, he found that plaintiff's emotional reaction to the supply room position

would certainly affect the suitability of the job. In Dr. Battigelli's opinion, the readjustment required would be a continuous source of emotional difficulty and aggravation to the plaintiff.

18. Plaintiff was also examined by Dr. Thomas K. White, a private psychologist with special expertise in vocational rehabilitation and job skills. This doctor was of the opinion that plaintiff "could not return to any of the work which he has done in the past" and that he "could not undertake significant gainful employment existing in the regional and national economies in significant numbers" because of his lack of residual and transferable job skills. In addition, Dr. White opined that the plaintiff could not fill a job such as that offered on a full-time regular basis due to his health, and thus that it ultimately would be more favorable for him not to undertake the proffered supply room position.

The Commission noted in its findings that plaintiff underwent coronary bypass surgery in the summer of 1981 and that, while his chest pain had since decreased, he still suffered from shortness of breath. The Commission further found that as a result of byssinosis, plaintiff was totally disabled.

The Commission concluded that plaintiff was entitled to workers' compensation for the permanent total disability resulting from his byssinosis and for medical expenses in connection with its treatment. The Commission further concluded that plaintiff was justified in refusing the job offered him in the supply room.

Accordingly, the Commission awarded benefits to plaintiff, accrued since 5 October 1978, his last day worked, as well as attorney's fees and the costs of the action. An error in the amount of the award was corrected by amendment on 3 November 1982. On 10 November 1982, defendant appealed.

*Kirby, Wallace, Creech, Sarda and Zaytoun, by John R. Wallace, for plaintiff-appellee.*

*Smith, Moore, Smith, Schell and Hunter, by J. Donald Cowan and Caroline Hudson, for defendant-appellant.*

EAGLES, Judge.

I

Defendant first argues that the Industrial Commission erred in finding and concluding that plaintiff was totally and permanently disabled when there is evidence that he was offered employment consistent with his medical limitations at no reduction in pay. Defendant argues that the evidence tends to show (1) that changes in the operation of the mill had measurably improved the dust content in the supply room air since plaintiff had last worked there in October of 1978, (2) that the job was totally sedentary and any requirement that plaintiff lift or carry anything had been removed, (3) that he could work only when he felt himself able to do so and only for so long as he was able, and (4) that he would be paid his former salary.

a.

Defendant's argument centers on the statutory definition of disability:

> The term "disability" means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment.

G.S. 97-2(9). Many opinions from this Court and our Supreme Court have interpreted this provision in a manner similar to *Dail v. Kellex Corp.*, 233 N.C. 446, 64 S.E. 2d 438 (1951). There, our Supreme Court said,

> The disability of an employee because of an injury is to be measured by his capacity or incapacity to earn the wages he was receiving at the time of the injury. Loss of earning capacity is the criterion. If there is no loss of earning capacity, there is no disability within the meaning of the act. (Citations omitted.)

*Id.* at 448-49, 64 S.E. 2d at 440. *See, e.g., Little v. Food Service*, 295 N.C. 527, 246 S.E. 2d 743 (1978); *Ashley v. Rent-a-Car Co.*, 271 N.C. 76, 155 S.E. 2d 755 (1967); *Hall v. Thomason Chevrolet*, 263 N.C. 569, 139 S.E. 2d 857 (1965); *Anderson v. Motor Co.*, 233 N.C. 372, 64 S.E. 2d 265 (1951); *Robinson v. J. P. Stevens*, 57 N.C. App. 619, 292 S.E. 2d 144 (1982) (dealing specifically with disability resulting from byssinosis); *Morgan v. Thomasville Furn. Industries*, 2 N.C. App. 126, 162 S.E. 2d 619 (1968). *See generally*

8 N.C. Index 3d, Master and Servant, § 69.1 (1977 and Supp. 1983).

### b.

With this definition of disability in mind, the claimant in a Workers' Compensation case has the burden of proving (1) that the claimed disability is the result of a compensable injury, and (2) that he or she was incapable after the injury of earning, in the same or any other employment, the same wage earned before the injury. *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 290 S.E. 2d 682 (1982); *Loflin v. Loflin*, 13 N.C. App. 574, 186 S.E. 2d 660, *cert. denied*, 281 N.C. 154, 187 S.E. 2d 585 (1972). In determining whether a claimant has met this burden before the Industrial Commission, our review is limited to the issues of (1) whether the Commission's findings of fact are supported by any competent evidence and (2) whether those findings justify the legal conclusions and decision of the Commission. *Hansel v. Sherman Textiles*, 304 N.C. 44, 283 S.E. 2d 101 (1981). These standards of review apply even though there may be evidence which supports different findings or conclusions. *Id., Inscoe v. Industries, Inc.*, 292 N.C. 210, 232 S.E. 2d 449 (1977).

In this case, defendant makes no specific exception to the Commission's findings and conclusions that plaintiff suffers from chronic obstructive pulmonary disease (COPD) with a byssinosis component. Under their general exception to the entry of the opinion and award, they do not argue that the Commission's conclusions regarding plaintiff's byssinosis are not supported by the findings of fact. Byssinosis, as a component of COPD, is a compensable occupational disease. *Rutledge v. Tultex*, 308 N.C. 85, 301 S.E. 2d 359 (1983); G.S. 97-52, 97-53(13). There is likewise no dispute that plaintiff is unable to return to his old job as a floor supervisor. Assuming that plaintiff's byssinosis has made a return to his former job impossible, plaintiff still has the burden of proving that his byssinosis disables him from earning the same wage in any other employment. *See Robinson v. J. P. Stevens, supra.* Plaintiff must also prove the extent of that disability. *Hilliard v. Apex, supra.*

### c.

The thrust of defendant's argument is that the evidence shows that defendant is willing to pay plaintiff his old salary to

perform another job that is within his medical restrictions, however limiting they might be, and that he is therefore not disabled and not entitled to disability compensation within the meaning of the law. We disagree.

Although the evidence is conflicting, there is sufficient competent evidence to support the Commission's findings of fact regarding plaintiff's physical condition and his inability to perform the proffered supply room job. In his deposition, Dr. Battigelli volunteered his opinion that "even a menial, minimal amount of activity indeed may be taxing Mr. Peoples' tolerance to a significant extent." Dr. Kilpatrick testified that physical exertion or exposure to *any* cotton dust would endanger Mr. Peoples' health.

The testimony of Melvin Witcher, who performed the hygiene survey, was that the supply room area, where Mr. Peoples would have worked, was "a very clean work area," and that there was very little difference between the air quality in the supply room and "outside on a clear fall day" or in the conference room where his deposition was taken. There is no testimony in the record, however, that the amount of cotton dust in the supply room, by whatever source generated, was so insignificant as to make it an acceptable work environment for the plaintiff. The testimony indicates rather that Mr. Peoples' byssinosis was such that it was capable of escalating unpredictably and regardless of whether he was at work, at home, or whether he was engaged in any physical activity. Dr. Kilpatrick testified on cross examination by defendant:

> In my opinion, in talking to and testing Mr. Peoples over a period of a little over a year now, I think, it would be better for him not to work in that I don't know at which time his disease is going to exacerbate, . . . .

## II

Defendant nevertheless contends that the supply room job is consistent with Mr. Peoples' medical limitations in that he need not engage in any physical activity at all and that he would only be required to work when, if, and for as long as he felt able to do so. Theoretically, given our understanding of Mr. Peoples' medical limitations, defendant is willing to pay him the same salary in the

supply room job that he was earning as a supervisor without regard for whether he comes to work, how long he stays, and how much he does while he is there. Defendant argues that, as long as plaintiff receives compensation for this "work," he is not disabled for purposes of workers' compensation law and cannot claim benefits for a disability.

a.

Defendant relies for this contention on the case of *Branham v. Panel Co.*, 223 N.C. 233, 25 S.E. 2d 865 (1943). The claimant in *Branham* had injured his back so that he was unable, upon returning to work, to perform the full range of physical tasks he had performed prior to the injury. His employer offered him his old wage to work at a similar job that was within his ability to perform. The claimant filed a workers' compensation claim. The Commission in *Branham* found that the claimant was entitled to compensation for the statutory period " 'less such time that he has been paid full wages.' " *Id.* at 235, 25 S.E. 2d at 867, *quoting* the opinion and award of the Industrial Commission. The Commission found that the claimant there had returned to work within the seven day waiting period and was " 'being paid full wages in lieu of compensation by his employer.' " *Id.* The *Branham* claimant was awarded medical expenses but the Commission withheld compensation for the injury provided that, within the period covered by the award, his wages did not fall below what he was being paid prior to his injury. On appeal by the claimant, the Superior Court held that no compensation was appropriate on the facts of the case. The claimant appealed to the Supreme Court.

The Supreme Court held that the Superior Court had correctly ruled that plaintiff was not entitled to workers' compensation as long as he was earning his old wage. Defendant here contends that Mr. Peoples' situation is identical to that of the claimant in *Branham* and that Mr. Peoples, like the claimant in *Branham*, has taken the position that the "wages offered to him by Cone Mills are offered out of sympathy and that they do not reflect his actual earning capacity and should be discounted for purposes of determining disability." The *Branham* court, relying on the legal meaning of disability set forth above, answered this argument as follows:

However urgently he may insist that he is "not able to earn" his wages, the fact remains that he is receiving now the same wages he earned before his injury. That fact cannot be overcome by any amount of argument. It stands as an unassailable answer to any suggestion that he has suffered any loss of wages within the meaning of the Act.

. . . There is no "disability" if the employee is receiving the same wages in the same or any other employment. That "in the same" employment he is not required to perform all the physical work theretofore required of him can make no difference. Even so, if this be not "the same employment" then it clearly comes within the term "other employment."

*Id.* at 237, 25 S.E. 2d at 868. We note that this language was held to be *dictum* in *Ashley v. Rent-a-Car Co., supra.*

While agreeing with the reasoning underlying the lower court decision in *Branham*, the Supreme Court did not unreservedly affirm it. Rather, it modified that decision of the Superior Court so that the conclusions and award of the Industrial Commission were "affirmed without qualification." *Branham v. Panel Co., supra*, at 239, 25 S.E. 2d at 869. In so holding the Court reasoned:

To protect the employee against the possibility that the employer might, at the expiration of 12 months [now 2 years for occupational diseases, G.S. 97-58], . . . discontinue the employment and thus defeat the rights of the employee, the commission, after finding the existence of the disability, directed that an award issue subject to specified limitations. The court below entered judgment striking this provision and affirming the judgment of the commission as thus modified. The exception to the judgment challenges the correctness of this ruling. It must be held for error.

The commission adjudged the rights and liabilities of the parties. It then directed compensation at this statutory rate "at any time it is shown that the claimant is earning less," etc. By this order, the commission, in effect, retained jurisdiction for future adjustments. In so doing, it did not exceed its authority.

*Id.* at 238, 25 S.E. 2d at 868-69 (bracketed portion added).

### b.

While there are factual similarities, *Branham* is distinguishable in that it involved permanent *partial* disability while this case involves permanent *total* disability. Furthermore, *Branham* stands for a proposition that, if anything, weakens defendant's argument rather than supports it. We read *Branham* to say that an employer may *not* avoid its liability under the workers' compensation law by offering an injured employee a job at his old wage that is within his ability to perform. Defendant's reliance on *Branham* is clearly misplaced.

Here, plaintiff has satisfactorily established that he is totally and permanently disabled and that his disability is due to an occupational disease. He is therefore entitled to compensation for the disability as prescribed in G.S. 97-29. The fact that defendant has offered to pay plaintiff his full salary to work at a "job" that is allegedly consistent with his medical limitations does not negate either plaintiff's disability or the defendant employer's obligation to compensate him for it. *Ashley v. Rent-a-Car Co., supra.* Defendant has attempted here to remove any practical difference between compensation for a disability and wages for work performed. Indeed, plaintiff's weekly salary is more than he stands to receive by way of compensation for his injury. But the difference between the two, as noted in *Branham* and *Ashley*, is more than semantic: certain legal rights attach to plaintiff's entitlement to workers' compensation that do not attach to his status as an employee. Defendant's argument in effect urges us to ignore these differences. This we cannot do and we accordingly find defendant's first argument to be without merit.

### III

Defendant next argues that the Commission erred in finding and concluding that plaintiff's refusal to take the supply room job was justified. This argument is largely predicated on the contention considered and rejected above: that the supply room job was consistent with plaintiff's medical limitations and he was therefore required to accept it. Having rejected that contention, we find no merit in defendant's argument here. The only additional point urged by defendant is that plaintiff's continued refusal to accept the supply room position was unjustified because it was based on a fear that his condition would be aggravated as it was

when he attempted to work in October of 1978. Defendant contends that this fear no longer has a basis in fact because of improvements in the air quality in the supply room and changes in the job requirements.

As noted above in Part I, the evidence shows clearly that Mr. Peoples' byssinosis is capable of escalating under any circumstances. Moreover, his October 1978 attempt to work in the supply room for four half-days caused him to be hospitalized for two weeks and required him to rest practically the whole time away from work on those four days. Regardless of changes in conditions affecting the supply room job, Mr. Peoples' fear that his condition will be aggravated is hardly baseless. There is medical testimony in the record that plaintiff's anxiety that something may happen to him on the job contributes to the aggravation of his condition. Defendant's second argument is without merit.

IV

Defendant next argues that the Commission erred in awarding compensation for total permanent disability. In support of this argument, defendant contends that the evidence shows that plaintiff was only partially disabled from byssinosis. As we noted earlier, plaintiff has established that he is totally disabled from any work and that his disability is due to an occupational disease. Accordingly, we find no merit in this argument.

V

Finally, defendant argues that, if plaintiff is found entitled to compensation, the award should be adjusted to reflect the amount paid to him as wages. We agree. The findings of fact show that plaintiff was paid his full wage from 5 October 1978 through February 1979, even though he last worked on 5 October 1978. The Commission concluded that plaintiff was entitled to compensation beginning 5 October 1978. While plaintiff is entitled to the compensation awarded, the self-insured employer is entitled to a setoff against the amount it must pay plaintiff for wages paid to him after the effective date of the award. We therefore remand the cause to the Industrial Commission for further proceedings as necessary to determine the proper award.

In re Lee

Remanded.

Judge WELLS concurs.

Judge HEDRICK concurs in the result.

Judge WELLS concurring.

I deem it important to emphasize the dispositive issue in this case. The medical evidence was abundant that plaintiff was disabled within the meaning of G.S. 97-2(9). Although defendant's offer of continued "employment" at equal or better wages might constitute some evidence of plaintiff's ability *to continue to earn* wages, it certainly is not conclusive in this issue.

Judge HEDRICK joins in this concurring opinion.