Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission modifies and affirms the Opinion and Award of the Deputy Commissioner.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All the parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. The employer-employee relationship existed between defendant-employer and plaintiff at all relevant times herein.
3. Liberty Mutual Insurance Company was the workers compensation carrier on risk at all relevant times herein.
4. Plaintiffs average weekly wage was $661.60 per week at all relevant times herein.
5. Plaintiff sustained an injury to his back arising out of and in the course of his employment on 11 June 1991.
6. The parties entered into a Form 21 Agreement, which was approved by the Industrial Commission on 11 July 1991, wherein defendant-employer and defendant-carrier (hereinafter defendants) agreed to pay plaintiff compensation at the rate of $406.00 per week beginning 19 June 1991, and continuing for "necessary weeks.
7. Plaintiff retained Attorney George W. Lennon on 18 November 1991, to represent him regarding his workers compensation claim.
8. On 14 July 1994, defendant-carrier faxed a letter to Mr. Lennon stating that "on 12 June 1994, Mr. Johnson was offered full time employment at $4.25 per hour as an Airport Security Screener. Said faxed letter also stated that "he has until July 18, 1994 to accept or decline this position. Later on 14 July 1994, plaintiff, through his attorney, filed a Form 33, Request for Hearing.
9. On 18 July 1994, Collins Barwick, attorney for defendants, filed a Form 24, Application to Stop Payment of Compensation. In support of said Form 24, defendants attached a letter from "Combined Contract Services which stated that plaintiff had been offered employment on 12 July 1994, in the position of Airport Security Screener. Said letter also stated that the position paid $4.25 per hour and was full time.
10. By letter dated 18 July 1994, plaintiffs attorney notified defendants and the Industrial Commission that plaintiff "would accept employment as an Airport Security Screener, under protest, stating that the job did not meet the requirements of Peoples v. Cone Mills, [69 N.C. App. 263, 317 S.E.2d 120, modified on other grounds, 316 N.C. 426,342 S.E.2d 798 (1986)] among other reasons.
11. On 8 August 1994, plaintiff started work for "Combined Contract Services. Plaintiff worked the following hours and received the following gross pay:
Time Period Total Hours Gross Pay
8-8-94 to 8-21-94 32 $136.00
8-21-94 to 9-4-94 30 $127.50
9-4-94 to 9-18-94 18 $ 81.50
9-18-94 to 10-2-94 20 $ 85.00
10-2-94 to 10-16-94 2 $ 8.50
12. On 11 August 1994, defendants 18 July 1994 Form 24 was approved. Hand-written on the approved Form 24 were the words: "Based on RTW for different employer. Tpd may be payable.
13. On 24 August 1994, and again on 2 September 1994, Mr. Lennon moved the Commission for reconsideration of the Form 24.
14. On 12 September 1994, an Order was entered by Nick P. Davis, Executive Secretary, which stated:"
The facts, as I understand them, plaintiff has refused any type of job with his employer, but he did return to work for another employer at a lesser paying job.
If this is the case, defendants are ordered to apply G.S. 97-30
retroactively.
15. At the time of the job offer in July 1994, and of plaintiffs resumption of employment in August, 1994, defendant-employer did not have an employment position for plaintiff to return to.
16. On 20 September 1994, defendants attorney wrote Mr. Lennon and stated:"
Defendants have not been supplied with any information regarding Mr. Johnsons current wages at his new employment position. If you would provide me with his earning records, we can compute N.C. Gen Stat. 97-30 as noted by Executive Secretary Davis.
17. On 1 December 1994, defendants attorney wrote Mr. Lennon and stated:"
I confirmed with Liberty Mutual on Thursday, December 1, 1994 that we would catch Mr. Johnson up with temporary partial disability payments from the last payment on October 6, 1994 to December 1, 1994 and continue payments at the rate of $406.00 per week. Based on the release from Dr. Gwinn, these are temporary partial disability payments pursuant to N.C. Gen. Stat. 97-30; however, since the calculations under 97-30 are close to the compensation rate, we will continue paying them at the rate of $406.00 and just take a credit for the 97-30 benefits once we have a final compilation of his wages earned at his employment position.
18. This matter was scheduled for hearing on 20 February 1995; however, the case was continued by the 17 February 1995 Order of Continuance of Deputy Commissioner Richard B. Ford "to be heard in due course.
19. On 2 November 1995, George Lennon faxed the following note to the attorney for defendants:"
We received the attached 2 checks. Both are made out to our client. What about attorneys fees? Will a separate check be issued to us or should we return these checks have them reissued?
Attached to the 2 November 1995 note were copies of two checks, one in the amount of $4024.68 and one in the amount of $694.26. Both checks had printed on them "TP EMP under "IND TYPE.
20. On 22 November 1995, George Lennon sent the following letter to the attorney for defendants:"
Enclosed, find two checks which were recently received from Liberty Mutual. Please return these checks to the carrier and have them reissued. Please request the carrier to have the checks prepared in both this firm and our clients name, or preferably, made payable in two checks, one for our client and one to this firm for attorneys fees.
Enclosed with that 22 November 1995 letter were the same two checks that had been faxed on 2 November 1995.
21. This matter was rescheduled for hearing in Raleigh on 6 December 1995. On 10 November 1995, defendants attorney wrote Mr. Lennon and stated:"
As you know, your client is continuing to receive temporary total disability benefits, and I do not believe there are any issues currently in dispute which would require the necessity of the hearing. As long as we keep paying temporary total disability, it would not seem wise use of the Industrial Commissions time to hold a hearing in this matter.
22. Mr. Lennon followed up with defendants attorney with additional concerns about the approval of medical treatment. On 4 December 1995, defendants attorney again wrote Mr. Lennon, this time stating:"
I have confirmed with Liberty Mutual that we will honor Dr. Tomaszeks treatment and Dr. Comers treatment at the present time. Therefore, there is no need for the December 6 hearing. As you and I discussed, we still have the right to an IME on Dr. Comers treatment and Dr. Tomaszeks treatment if we so desire; however, we will not pursue this at this time. I presume that you will take care of removing this matter with Deputy Commissioner Cramer.
23. On 7 December 1995, by Order of Kim L. Cramer, Deputy Commissioner, the case was removed from the 6 December 1995 hearing docket. That Order stated that "prior to hearing, plaintiffs counsel advised the undersigned that the carrier had agreed to pay for the disputed medical treatment and there is no need for a hearing at this time.
24. On 24 April 1996, George Lennon filed a Motion to Withdraw as the attorney for plaintiff. An Order of Withdrawal was filed by the Industrial Commission on 21 August 1996, stating that an attorney fee for Mr. Lennon would "be set at the appropriate time.
25. On 30 May 1997, defendants discontinued plaintiffs disability compensation, based on the defendants calculation of that date as being the 300 week expiration date under N.C. Gen. Stat. 97-30.
26. On 5 June 1997, Pat Benton wrote Plaintiff and stated:"
This letter is in response to yours dated April 2, 1997. It appears that you have been receiving temporary partial disability benefits which can continue for up to three hundred weeks from the date of injury. It appears that you elected to accept temporary partial benefits; therefore, your benefits would terminate when the three hundred weeks expire. The only way that you might collect additional benefits is if you have a worsening of your condition during the two year statute of limitations which begins running when the three hundred weeks expires.
27. Plaintiff retained Charles D. Mast to represent him on 11 August 1998, and due to Mr. Lennons pending claim for an attorney fee, plaintiff and Mr. Mast signed an attorney fee agreement allowing a one-third (1/3) attorney fee, subject to Industrial Commission approval.
28. Plaintiff is also presently treating with Dr. Wilson S. Comer, Jr., a psychiatrist in Raleigh, for depression allegedly related to plaintiffs chronic pain.
29. On 10 March 1999, defendants authorized a trial phase of the spinal cord stimulator recommended by Dr. Tomaszek. However, Dr. Tomaszek will not proceed with the trial phase unless he has approval to proceed with the permanent stimulator should the trial phase provide plaintiff relief.
30. Defendants paid plaintiff the sum of $406.00 per week for the periods of time that that plaintiff was out of work up until 30 May 1997. Defendants have not paid plaintiff any indemnity compensation since that time. As of the date of the hearing before the Deputy Commissioner in April 1999, plaintiff has received $125,454 in disability compensation and $40,009.44 in medical compensation. Defendant-carriers file identifies $58,464 of the said disability compensation as being temporary partial disability. Plaintiff does not stipulate that any compensation paid was temporary partial disability or an election of N.C. Gen. Stat.97-30 benefits.
31. Plaintiff has not worked since October 1994.
32. Stipulated Exhibits entered into evidence include:
a. Stipulated Documents Exhibit;
b. Medical Records Exhibit; and
c. Supplemental Stipulated Records Exhibit
***********
Based upon the stipulations and the competent evidence from the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is a male born on 4 September 1955. He graduated from North Carolina State University with a Bachelor of Arts degree in business management and thereafter completed computer programming certification at N.C.S.U. in 1982. He was employed by defendant-employer for approximately eleven years prior to his injury.
2. On 11 June 1991, plaintiff injured his back when he was placing a package weighing approximately 50 lbs. on the floor. Plaintiff felt immediate pain, and alleged to have later felt something rotate in his back.
3. Defendants are contending in this case that plaintiffs trial attempts to return to work constituted an automatic election of partial disability benefits under N.C. Gen. Stat. 97-30. Accordingly, defendants maintain that plaintiff is no longer entitled to indemnity compensation since the 300 week maximum period for partial disability benefits allowed by statute has elapsed. Plaintiff contends that no election was ever made, that plaintiff has remained totally disabled and the trial attempts to return to work are not indicative of wage earning capacity.
In addition, the evidence raises the issue of whether defendants are estopped from raising N.C. Gen. Stat. 97-30 as a bar to further compensation when defendants in their letter to plaintiffs counsel dated 10 November 1995 stated: "As you know, your client is continuing to receive temporary total disability benefits [emphasis added], and I do not believe there are any issues currently in dispute which would require the necessity of the hearing. Based upon this statement and resolution by agreement of a medical treatment issue, plaintiff consented to removal of his case from the hearing docket.
4. Plaintiff was treated by Dr. Michael D. Gwinn from 25 June 1991 to 8 November 1994, when Dr. Gwinn recommended that plaintiffs care be transferred to another physician. In September 1991, Dr. Gwinn believed plaintiff had reached maximum medical improvement and gave him a 5% permanent partial disability rating for his back. No weight is accorded this "rating and finding of maximum medical improvement by Dr. Gwinn.
5. Plaintiff was treated by Dr. David Tomaszek from 7 July 1995, through 1999, and by Dr. Wilson S. Comer, Jr., from 6 September 1995, and continuing through the present. The Full Commission finds as fact that plaintiff has not yet reached maximum medical improvement.
6. While under the care of Dr. Gwinn, plaintiff was released to try to return to sedentary, part-time work, for a maximum of 20 hours per week.
7. On 8 August 1994, at the request of defendants and while still under the medical care of Dr. Gwinn, plaintiff attempted to perform a light-duty job for another employer, Combined Contract Services, who at the time had a contract with Raleigh-Durham airport to provide security services.
8. Combined Contract Services normally required their employees to move around to different security positions, but modified one of their security positions so that plaintiff could remain at the most sedentary of the work positions. However, plaintiff was not able to physically work the hours required of the security job and his hours gradually decreased over the course of two months until he stopped working completely on or about 16 October 1994.
9. After plaintiff stopped working at Combined Contract Services, defendants resumed paying plaintiff total disability compensation at the rate of $406.00 per week beginning on or about 16 October 1994.
10. This matter was placed on a 6 December 1995 hearing docket. Prior to the scheduled hearing, defendants notified plaintiff that he was "continuing to receive temporary total disability benefits and that they did "not believe there [were] any issues currently in dispute which would require the necessity of the hearing.
11. This matter was removed from the 6 December 1995 hearing docket.
12. Defendants terminated plaintiffs compensation on 30 May 1997.
13. Defendants have not produced any evidence that plaintiff has been able to return to suitable employment at the same or similar wages as he was earning prior to his injury. Nor have defendants offered any evidence that plaintiff is capable of earning wages at any kind of employment beyond the return to work effort which he made from August through October 1994 in a part time, modified job. The wages earned by plaintiff in his attempt to return to modified work are not indicative of his wage earning capacity in the competitive job market. All plaintiffs treating physicians were of the opinion that plaintiff should attempt to return to work, and that his work attempt was unsuccessful. Plaintiffs current treating physicians are of the opinion that plaintiff is not presently capable of working in any kind of job, nor has he been since October 1994 when he stopped working the security job.
14. The 12 September 1994 Order of former Executive Secretary Nick Davis which is referenced in Stipulation No. 14 above, was based upon a misunderstanding of the facts and had no effect since the Order by its express terms was conditioned upon whether his understanding of the facts was correct.
15. Plaintiff has been totally disabled from employment from approximately 16 October 1994, and continuing through the present, as supported by the opinions of all plaintiffs treating physicians. Dr. Tomaszek indicated that plaintiff has been totally disabled since plaintiff came under his care through the last time he saw plaintiff in 1999. When Dr. Tomaszek first examined plaintiff on 7 July 1995, he found that plaintiff had marked, limited range of motion in his back, radiation of pain into his legs which was worse with weight bearing and straight leg raising, decreased sensation over the top of the feet, and considerable depressive overlay with regard to his pain complaint. Dr. Tomaszek found plaintiffs pain complaints to be consistent throughout his treatment with the complaints expressed to doctors who had treated plaintiff prior to him. Dr. Tomaszek agreed with the other doctors that plaintiffs condition was not operable because it would require stabilization at four different levels and he would not recommend or perform surgery on that many levels of the spine. Dr. Tomaszek was also of the opinion that all the different forms of treatment that have been attempted by him and plaintiffs other treating physicians constituted appropriate treatment.
16. Defendants showed Dr. Tomaszek a video of plaintiff which purportedly depicted plaintiff performing tasks that were beyond plaintiffs stated capabilities. After viewing the video, Dr. Tomaszek was of the opinion that plaintiffs actions on the video were consistent with what plaintiff had told him and with Dr. Tomaszeks opinion of plaintiffs capabilities.
17. Dr. Tomaszek recommended a trial phase of a spinal cord stimulator, which defendants have approved. He was of the opinion that if the trial phase of the stimulator provides plaintiff any significant relief of his pain, then a permanent spinal cord stimulator would likely provide plaintiff significant relief of his pain.
18. Plaintiff did not make an election of benefits by attempting the modified job from August through October 1994. Plaintiff did not sign an Industrial Commission Form 26 Agreement agreeing to elect compensation for partial disability under N.C. Gen. Stat. 97-30. Also, plaintiff had not reached maximum medical improvement and therefore could not make a determination of the most favorable remedy as of August 1994.
19. Because plaintiff had not made an election of benefits pursuant to N.C. Gen. Stat. 97-30, when he failed at his attempted return to work, he reverted to the status of temporary total disability and the subsequent benefits he received were pursuant to N.C. Gen. Stat. 97-29. Defendants acknowledgement of this in the 10 November 1995 letter to plaintiffs counsel in which they stated that there were no issues in controversy to justify a hearing in 1995 and agreed to pay for the medical treatment recommended by his physicians as well as providing plaintiff temporary total disability benefits, operates to estop defendants from raising N.C. Gen. Stat. 97-30 as a bar to plaintiffs claim for further compensation.
20. Given plaintiffs high level of education and relatively young age (45 at the time of this Opinion and Award), the Full Commission finds as fact that plaintiff would benefit from a vocational rehabilitation program.
21. Defendants contention that plaintiff had made an election to receive benefits pursuant to N.C. Gen. Stat. 97-30 is not supported by the facts of this case or by the law.
22. Defendants had reasonable grounds to defend this claim.
23. Given the complexity of the issues in this case, the usual and customary practice of the Industrial Commission to award an attorney fee of 25% of plaintiffs recovery is reasonable.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. The initial burden is on plaintiff to prove both the existence of his disability and its degree. Hilliard v. Apex Cabinet Company,305 N.C. 593, 290 S.E.2d 682 (1982). Defendants in this case admitted liability under the Workers Compensation Act by signing the Industrial Commissions Form 21 Agreement, which, once approved, became binding upon the parties. Dalton v. Anvil Knitwear, 119 N.C. App. 275, 282-83,458 S.E.2d 251, 256-57 (1995). An approved Form 21 Agreement creates the presumption of an employees continued disability. Kisiah v. W.R. KisiahPlumbing, Inc., 124 N.C. App. 72, 476 S.E.2d 434 (1996), disc. reviewdenied, 345 N.C. 343, 483 S.E.2d 169 (1997).
2. Once the presumption attaches, the employer has the burden of establishing that the plaintiff is employable. Id. Plaintiffs failed return to work effort does not operate to rebut the presumption of continuing disability. Therefore, as plaintiff has met his burden, there is a presumption that the disability continues until defendants can meet their burden of showing that plaintiff is capable of being employed in suitable employment at wages which are similar or equal to those he was earning at the time of his injury. Id.; Bridges v. Linn-Corriher Corp.,90 N.C. App. 397, 399, 368 S.E.2d 388, 390; disc. rev. denied,323 N.C. 171, 373 S.E.2d 104 (1988).
3. The Full Commission concludes that the Form 24 application to terminate or suspend benefits approved by former Executive Secretary Nick Davis, was improvidently approved, and such approval is hereby set aside.
4. Plaintiff is entitled to continuation of his total disability benefits pursuant to N.C. Gen. Stat. 97-29, for the period of time beginning 30 May 1997, and continuing until further order of the Commission.
5. Plaintiff would benefit from vocational rehabilitation services.
6. Plaintiff has not yet reached the end of his healing period. Plaintiff is entitled to any continuing medical treatment and vocational rehabilitation services, including pain medication, psychiatric treatment, and a spinal cord stimulator, so long as it tends to effect a cure or give relief. N.C. Gen. Stat. 97-25.
7. Given the issues involved in this case, the usual and customary attorney fee of 25% of plaintiffs recovery is reasonable and is hereby approved by the Commission.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff compensation for total disability in the amount of $406.00 per week beginning the week of 30 May 1997, and continuing until further order of the Commission. That portion of this award which has accrued shall be paid to plaintiff in a lump sum, subject to the attorneys fee awarded below.
2. Defendants shall continue to pay for any continuing medical treatment, such as pain medication, psychological treatment, vocational rehabilitation and a spinal cord stimulator, so long as such treatment tends to effect a cure, give relief, or lessen his period of disability.
3. Plaintiffs counsel and former counsel are entitled to divide a reasonable attorneys fee of 25% of the accrued award contained in Paragraph 1 above. Defendant shall pay to plaintiffs counsel and former counsel directly the sum of 25% of accrued total disability benefits. In addition, plaintiffs current counsel is entitled to a reasonable attorneys fee of 25% of plaintiffs unaccrued continuing total disability benefits. Defendants shall pay directly to plaintiffs present counsel every fourth weekly check of plaintiffs unaccrued continuing total disability benefits, so long as plaintiff receives such benefits.
4. Defendants shall bear the costs of this action.
This the ___ day of September, 2000.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_______________ LAURA K. MAVRETIC COMMISSIONER
S/_______________ DIANNE C. SELLERS COMMISSIONER