The Deputy Commissioner and the majority found that defendant had several light-duty jobs available in the sheet metal department and that plaintiff's failure to attempt these jobs supported a finding that he improperly refused to accept suitable employment. The record, however, indicates that plaintiff was NEVER offered a definite light duty job before or after his termination. All discussions of a potential light duty job were hypothetical and premature, at best. Neither Mr. Sawyer nor Ms. Laughter actually testified they officially offered plaintiff any job. Both Mr. Sawyer and Ms. Laughter admitted any possible job offer was designed to accommodate injured workers for a "very short time" and that any temporary job would not continue at the wages earned by plaintiff.
Even assuming that a possible light duty job was offered to plaintiff, this vague offering does not rebut the Russell burden. The employment suggested by Mr. Sawyer and Ms. Laughter are "make work" jobs that are not available to the general public in a competitive job market. These jobs do not rebut the Russell burden met by plaintiff. Peoples v. ConeMills, 69 N.C. App. 263, 317 S.E.2d 120 (1984) and Lanning v.Fieldcrest, 352 N.C. 98, 530 S.E.2d 54 (2000).
In Peoples v. Cone Mills, supra, the Court held that evidence of continued disability cannot be rebutted by the employer by creating a position that is "not ordinarily available in the competitive job market" since such positions do not accurately reflect wage earning capacity.Stamey v. N.C. Self Insurance Guar., 131 N.C. App. 662,507 S.E.2d 596(1998) rejected a modified position similar to the offered employment in this case noting that:
 Finally, although the evidence showed that SCT offered Plaintiff a position as a modified roller picker, the record is devoid of any evidence which would support the Commission's finding of fact that the modified roller picker position is "a real position which exists in the marketplace and is not `made work.' "See Peoples, 316 N.C. at 432-33, 342 S.E.2d at 803 (noting that competent evidence must support the Commission's findings of fact). Stamey, at 600.
Temporary jobs like the one suggested by defendants are not gainful employment that meets the burden to show plaintiff is capable of pre-injury earnings. Daughtry v. Metric Construction, 115 N.C. App. 354,446 S.E.2d 590, disc. review denied, 338 N.C. 515,452 S.E.2d 808(1994).
Dr. Lange's testimony should have been given very little weight. He admitted that because of his long-standing position as the company doctor he was going to go out of his way to help the company when he could, although he added, "I am talking about logistical things, not medical things. Early appointments being an example." His attitude toward his patient, however, showed that the payer-payee relationship was stronger than the doctor-patient relationship.
Since 1951, our Courts have recognized the compensability of pre-existing injuries accelerated or aggravated by on the job accidents. In Anderson v. Northwestern Motor Co., 233 N.C. 372, 64 S.E.2d 265
(1951), the Court reviewed the law in other jurisdictions and noted that:
 While there seems to be no case on the specific point in this State, courts in other jurisdictions hold with virtual uniformity that when an employee afflicted with a pre-existing disease or infirmity suffers a personal injury by accident arising out of and in the course of his employment, and such injury materially accelerates or aggravates the pre-existing disease or infirmity and thus proximately contributes to the death or disability of the employee, the injury is compensable, even though it would not have caused death or disability to a normal person. Schneider's [ 233 N.C. 375] Workmen's Compensation (Perm.Ed.), Text Volume 6, section 1543 (i); 58 Am.Jur., Workmen's Compensation, section 247; 71 C.J., Workmen's Compensation Acts, section 358. Anderson, at 74
In Wilder v. Barbour Boat Works, 84 N.C. App. 188, 352 S.E.2d 690
(1987), the Court considered the effect of a compensable on the job injury to a worker's knee that had already required a total knee replacement. In affirming a permanent and total determination by the Industrial Commission, Wilder noted that:
 When a pre-existing, non-disabling, non-job-related condition is aggravated or accelerated by an accidental injury arising out of and in the course of employment or by an occupational disease so that disability results, then the employer must compensate the employee for the entire resulting disability even though it would not have disabled a normal person to that extent.
 Id. In such a case, where an injury has aggravated an existing condition and thus proximately caused the incapacity, the relative contributions of the accident and the pre-existing condition will not be weighed. Anderson v. A.M. Smyre Co., 54 N.C. App. 337, 283 S.E.2d 433 (1981). Wilder, at 196
In the case at bar, plaintiff recovered from his earlier disability sufficiently to adequately perform his trade without missing any days or time from work for at least six (6) months before his August 3, 1999 accident. His pre-injury work attendance, fitness and ability to work were corroborated by Mr. Buckner's testimony. Plaintiff had regained sufficient physical ability for renewed earning capacity making $541.18 per week. The Deputy Commissioner and majority have improperly relied upon and emphasized plaintiff's disabled status prior to his successful return to work. The August 3, 1999 injury by accident at work destroyed plaintiff's earning capacity to return to his trade as a ductwork installer. Plaintiff is entitled to Temporary Total Disability (TED) benefits from the day he lost the capacity to make $541.81 per week until and if he becomes able to go back to work at that wage.
This 11th day of June 2002
 S/_____________ THOMAS J. BOLCH COMMISSIONER