***********
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence affirms in part and reverses in part the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as facts and concludes as a matter of law the following, which were entered into by the parties in a Pre-Trial Agreement, which was admitted into the record and marked as Stipulated Exhibit (1) at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On 12 October 1999, an employer-employee relationship existed between plaintiff and defendant-employer.
3. On 12 October 1999, defendant-employer was insured by State Farm Fire Casualty Company.
4. Plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer on 12 October 1999. Plaintiff's claim was accepted through an Industrial Commission Form 60, dated 20 December 1999.
5. At the hearing before the Deputy Commissioner, the parties submitted the following:
 a. Wage Records, which were admitted into the record and marked as Stipulated Exhibit (2);
 b. IRS W2 Forms, which were admitted into the record and marked as Stipulated Exhibit (3);
 c. A Record of Indemnity Compensation paid to plaintiff, which was admitted into the record and marked as Stipulated Exhibit (4);
 d. A Payment Record from State Farm Fire and Casualty, which was admitted into the record and marked as Stipulated Exhibit (5);
 e. A Pay Stub, which was admitted into the record and marked as Stipulated Exhibit (6), and;
 f. A Packet of Medical Records, which was admitted into the record and marked as Stipulated Exhibit (7).
6. Judicial Notice is taken of all Industrial Commission Forms in the file.
 ***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. Plaintiff was born on 17 October 1922. At the time of the hearing before the Deputy Commissioner, plaintiff was 78 years old.
2. Plaintiff has been employed as a real estate legal secretary since 1983 doing loan closing clerical work. For an undetermined period prior to her injury on 12 October 1999, plaintiff was employed by defendant-employer as a salaried employee earning $342.50 per week.
3. Due to personnel changes in defendant-employer's law firm in September 1999, plaintiff's employment status changed to a part-time, hourly position. As indicated in Stipulated Exhibit (6), as of 2 October 1999 plaintiff was earning $9.00 per hour and was working eight hours per day, three days per week earning an average weekly age of $216.00. The changes in plaintiff's work status and her wages occurred prior to and were entirely independent from her injury on 12 October 1999.
4. On 12 October 1999, plaintiff sustained an injury by accident arising out of and in the course of her employment when she was involved in an automobile accident while driving to the bank to make a deposit for defendant-employer. The compensability of this incident and the resulting injury, a chest contusion and strain, were accepted by defendants through an Industrial Commission Form 60 Employer's Admission of Employee's Right to Compensation. Pursuant to the Form 60, plaintiff began receiving temporary total disability compensation at the rate of $168.01 per week based upon an average weekly wage of $252.00. However, this average weekly wage was incorrect and should have been $216.00. This resulted in an overpayment by defendants of disability benefits.
5. On 14 October 1999, plaintiff was examined by her family physician, Dr. Salli Gallaher, who diagnosed her with a chest contusion and multiple chest wall strain with no acute injury. As of 4 November 1999, plaintiff had completed a course of physical therapy but her condition had not improved. However, by 3 December 1999, plaintiff was released to return to work beginning 14 December 1999, working four hours per day, two days a week. Dr. Gallaher planned to gradually increase plaintiff's hours by fifteen minutes per day.
6. Plaintiff returned to work for defendant-employer with restrictions on 15 December 1999, doing office clerical work. Defendants completed a second Form 60 and a Form 62 Notice of Reinstatement or Modification of Compensation on 20 December 1999. The Form 62 indicated that plaintiff had returned to work with restrictions on 15 December 1999. Defendants have continued to pay partial disability benefits in varying amounts, through the date of the hearing before the Deputy Commissioner.
7. By 26 June 2000, plaintiff's hours had increased to four and one-half hours per day, three days per week. At that time, plaintiff's hours were limited due to a lack of available work for defendant-employer. Subsequently, plaintiff sustained an unrelated urinary tract infection which caused weakness and nausea, and the hours she worked decreased. Plaintiff received treatment for this infection and in August 2000, she was able to return to a level of working four hours per day, three days per week.
8. On 9 October 2000, Dr. Gallaher noted that plaintiff was having increasing discomfort in her chest whenever she increased her activities. In addition, plaintiff was experiencing headaches and dizziness. Plaintiff was experiencing exhaustion even after four hours of work, and her blood pressure had increased due to chronic pain. Dr. Gallaher determined that plaintiff's health had improved as much as could ultimately be expected and that she would not be able to progress beyond the four hours per day, three days per week that she was currently working. Dr. Gallaher planned to assign plaintiff a permanent partial disability rating; however, because she had no experience with workers' compensation cases and was not familiar with the rating system, she did not assign a rating.
9. Dr. Gallaher continues to treat plaintiff, and as of 27 September 2001 was of the opinion that plaintiff's inability to work more than four hours per day, three days per week was a permanent restriction.
10. The purpose of N.C. Gen. Stat. § 97-2(5) is to arrive at a fair and just result, which were it not for the injury, would most nearly approximate the wages an employee would have earned in the particular employment at the time of the injury. Based upon the credible evidence of record, the average weekly wage that represents a fair and just result must be based upon a 24 hour work week, which accurately reflects the extent of plaintiff's employment at the time of her compensable injury. Accordingly, plaintiff's average weekly wage on 12 October 1999 was $216.00, which yields a compensation rate of $144.00.
11. As the result of her 12 October 1999 injury by accident, plaintiff is restricted from working more than four hours per day three days per week on a permanent basis. The Full Commission finds that plaintiff's part-time employment by defendant-employer is gratuitous. The medical evidence shows that plaintiff's condition prevents her from working even four hours per day without becoming exhausted. As of the date of the hearing before the Deputy Commissioner, plaintiff was unable to work more than two days a week and for no more than two and one half hours per day. Plaintiff testified that she cannot file due to constant pain, and cannot type for any length of time without taking additional medication. For these reasons, plaintiff's employment does not constitute suitable employment in that it is not employment which is available in the general market and thus is not indicative of plaintiff's wage earning capacity. Further, given plaintiff's current condition and her permanent restrictions which are a direct result of her injury by accident and her advanced age, plaintiff is permanently and totally disabled.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. An average weekly wage that arrives at a fair and just result must be based upon a 24 hour work week, which accurately reflects the extent of plaintiff's employment at the time of her compensable injury. N.C. Gen. Stat. § 97-2(5). Accordingly, plaintiff s average weekly wage on 12 October 1999 was $216.00, which yields a compensation rate of $144.00. Id.
2. The work plaintiff is able to perform for defendant-employer does not constitute suitable employment for the purposes of determining plaintiff's wage earning capacity. The evidence shows that plaintiff is unable to work the abbreviated schedule allowed by her treating physician due to continuing pain. The Full Commission concludes that plaintiff would be unable to obtain employment in the general labor market based on the limitations resulting from her compensable injury. "An injured employee's earning capacity must be measured not by the largesse of a particular employer, but rather by the employee's own ability to compete in the labor market. If post-injury earnings do not reflect this ability to compete with others for wages, they are not a proper measure of earning capacity. Peoples v. Cone Mills Corp., 316 N.C. 426, 437,342 S.E.2d 798, 805-06 (1986). "Wages paid an injured employee out of sympathy, or in consideration of his long service with the employer, clearly do not reflect his actual earning capacity, and for purposes of determining permanent disability are to be discounted accordingly."Peoples, 316 N.C. at 437, 342 S.E.2d at 805-06, quoting 2 A. Larson, TheLaw of Workmen's Compensation §§ 57.21, 57.34 (1983). In this case, defendant-employer's offer to plaintiff of continuing employment is the result of defendant's largesse and does not reflect her actual wage earning capacity in the labor market.
3. As the result of her 12 October 1999 injury by accident, plaintiff is permanently and totally disabled. Therefore, plaintiff is entitled to be paid by defendants weekly compensation benefits in the amount of $144.00 beginning on 12 October 1999 and continuing for the remainder of her life. N.C. Gen. Stat. § 97-29.
4. Defendants are entitled to a credit for any overpayment of weekly disability benefits made to plaintiff based upon an average weekly wage of $252.00 rather than $216.00. N.C. Gen. Stat. § 97-2.
5. The Full Commission has determined that plaintiff is entitled to permanent total disability compensation as of the 12 October 1999 date of injury. Because plaintiff may not collect compensation under N.C. Gen. Stat. § 97-29 and N.C. Gen. Stat. § 97-30 simultaneously, defendants are entitled to a credit for any temporary partial disability payments paid to plaintiff while she earned some wages subsequent to the 12 October 1999 injury by accident. N.C. Gen. Stat. § 97-42.
6. In addition, because plaintiff is entitled to permanent and total disability compensation, the award must be adjusted to reflect the amounts plaintiff has been paid in wages since the 12 October 1999 injury by accident. Accordingly, defendants are entitled to a setoff against the wages paid to plaintiff after the effective date of the award.Peoples v. Cone Mills Corp., 69 N.C. App. 263, 276, 317 S.E.2d 120,modified on other grounds, 316 N.C. 426, 342 S.E.2d 798 (1986).
7. As the result of her 12 October 1999 injury by accident, plaintiff is entitled to have defendants pay for all related medical expenses. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff permanent total disability compensation at the rate of $144.00 per week beginning on 12 October 1999 and continuing for the remainder of her life. That portion of compensation which has accrued shall be paid to plaintiff in a lump sum, subject to credits, setoffs, and attorney's fees awarded below.
2. Defendants shall, in the form of a credit, deduct from the lump sum payment any overpayment of disability benefits made to plaintiff based on an average weekly wage greater than $216.00. Defendants shall also deduct the amounts paid to plaintiff in temporary partial disability compensation subsequent to 12 October 1999.
3. Defendants shall, in the form of a setoff, deduct from the lump sum payment of compensation the amount of any wages paid by defendants to plaintiff since the 12 October 1999 date of injury.
4. Defendants shall pay for all medical expenses related to plaintiff's 12 October 1999 injury by accident.
5. A reasonable attorney's fee of 25% of the compensation awarded herein is approved for counsel for plaintiff. From the accrued compensation, less the amount deducted for overpayment, temporary partial disability compensation, and wages earned by plaintiff, this fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff. Thereafter, counsel for plaintiff shall receive every fourth check.
6. Defendants shall pay the costs.
This the ___ day of September, 2002.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ LAURA K. MAVRETIC COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN