TELLEASE B. STAMEY, Employee, Plaintiff v. N.C. SELF-INSURANCE GUARANTY ASSOCIATION for now insolvent SCT YARNS, INC., Employer; Carrier; Defendant

No. COA97-1553

(Filed 15 December 1998)

**Workers' Compensation— disability—created position—trial offer—declined**

The Industrial Commission erred by denying a workers' compensation claim for additional temporary total disability benefits and additional medical treatment where plaintiff developed impingement syndrome while working for plaintiff in 1990 and was awarded compensation; she returned to work but stopped due to pain and her physician testified that she was not capable of using her arm in a repetitive fashion and could not do a job causing repetitive flexion or abduction beyond 60 degrees; plaintiff was placed on medical leave, then offered a temporary position as a modified roller picker, which was created by removing certain duties and which was to be temporary to see if it worked; and plaintiff did not return to work. Once disability is established, the employee has the presumption of disability and the employer may not rebut the presumption by showing that the employee could earn pre-injury wages in a temporary position or by creating a position not ordinarily available in the competitive job market.

Appeal by plaintiff from Opinion and Award filed 4 August 1997 and from Order filed 10 September 1997 by the North Carolina Industrial Commission. Heard in the Court of Appeals 15 September 1998.

*Lewis & Shuford, P.A., by Robert C. Lewis, for plaintiff appellant.*

*Stuart Law Firm, PLLC, by Lee J. Van De Carr, Jr., for defendant appellee.*

GREENE, Judge.

Tellease B. Stamey (Plaintiff) appeals from the Opinion and Award of the North Carolina Industrial Commission (Commission) denying additional temporary total disability benefits and additional medical treatment and from the Commission's "Order Denying Plaintiff's Motion to Reconsider."

On 3 January 1992, Deputy Commissioner Roger L. Dillard, Jr. determined that, during August of 1990, while working for SCT Yarns, Inc. (SCT),[1] Plaintiff had developed impingement syndrome (a "significant aggravation of a pre-existing injury to her [right] shoulder") constituting an occupational disease. Plaintiff was awarded compensation from 1 October 1990 until 24 October 1990 and "for such periods subsequent to that date which [P]laintiff may have missed from work as a result of her impingement syndrome and continuing until such time as [P]laintiff returns to work or until further orders of the [Commission]." The Full Commission affirmed the deputy commissioner's award following SCT's appeal. Plaintiff returned to work for SCT in a light-duty position on 25 October 1990, and returned to her regular-duty job as a spinner by December of 1990. Plaintiff continued to work through 28 February 1991, when she was out of work for approximately six weeks following unrelated surgery. Plaintiff again returned to her regular-duty job as a spinner on 15 April 1991. On 10 July 1991, Plaintiff stopped work due to pain in her right shoulder and saw her treating orthopaedist, C. Michael Nicks, M.D. (Dr. Nicks) later that day. Dr. Nicks, the only physician who testified, stated that his diagnosis in July of 1991 was that Plaintiff's current problems were "all directly related to [the] impingement [diagnosed in August of 1990]." He felt that "the etiology of [her] pain was basically the

---

1. SCT, which was self-insured, became insolvent during the proceedings before the Commission, and the North Carolina Self-Insurance Guaranty Association became obligated for all of SCT's "covered claims." N.C.G.S. § 97-131(a) (Supp. 1997).

same" as it had been in August of 1990. Dr. Nicks also testified that Plaintiff's "case is indeed very difficult," and that she was not "capable of using her arm in a repetitive fashion, a strenuous fashion, and I do not think that she could have done a job causing repetitive flexion or abduction beyond 60 degrees." Dr. Nicks testified that Plaintiff's impingement syndrome, diagnosed by him in August of 1990, currently remained "a large portion of why she cannot work." He further testified that her work activities were a significant contributing factor of her impingement syndrome. Dr. Nicks restricted Plaintiff from performing heavy lifting and overhead work involving "right-side humeral flexion of greater than sixty degrees at the shoulder." Work within these restrictions was not available, so Plaintiff was placed on medical leave beginning 11 July 1991 and received company-funded short term disability benefits (not workers' compensation benefits) during the next thirteen weeks. On 13 January 1992, SCT offered Plaintiff a temporary position as a modified roller picker. SCT removed certain duties from the regular-duty spinner position to create the modified roller picker job. The evidence reveals that the modified roller picker position "started out as temporary until we saw if it was going to work."[2] The modified roller picker position would allow Plaintiff to use only her left arm and would not require her to lift her right arm higher than sixty degrees. Plaintiff would have been able to obtain assistance to perform the tasks involved in the job which were outside her restrictions. Plaintiff was told by SCT that "since the [modified] roller picker position was within the restrictions set forth by Dr. Nicks, the company expected her to return to work [on 17 January 1992]." Plaintiff did not return to work and, pursuant to company policy, SCT considered her failure to return to work as a voluntary resignation. In July of 1993, Plaintiff requested a hearing before the Commission, alleging that "[SCT] has not paid [P]laintiff compensation for the work [P]laintiff missed [after 11 July 1991] as a result of her impingement syndrome as previously ordered [on 3 January 1992]." SCT countered that Plaintiff's "current alleged disability is unrelated to her compensable impingement syndrome and [P]laintiff refused an offer of appropriate light duty work." Accordingly, a hearing was held on 18 April 1994, and was affirmed by the Full Commission on 4 August 1997.

Plaintiff testified at the hearing that the modified roller picker position was not a "real" position found in the marketplace, but the

---

2. The modified roller picker position became a permanent position at SCT in September of 1992.

Commission found that her testimony was not credible "since the evidence adduced . . . revealed that the *modified* roller picker job is both an important and necessary position in SCT's spinning room." The Commission concluded that the modified roller picker job was within Plaintiff's restrictions, and that Plaintiff could perform the modified roller picker job. In addition, the Commission concluded:

> The full-time job of *modified* roller picker which SCT offered to [P]laintiff is an important and necessary position in SCT's spinning room. Such job is a real position which exists in the marketplace and is not "made work." Plaintiff did not present evidence to rebut the presumption that this job was generally available in the competitive labor market. Saums v. Raleigh Community Hospital, 124 N.C. App. 219, 476 S.E.2d 372 (1996).

The Commission further concluded that "[s]ince [P]laintiff unreasonably refused to perform the *modified* roller picker job on 13 January 1991, [P]laintiff is not entitled to additional compensation and medical care during the continuance of such refusal to accept suitable employment." Accordingly, the Commission denied Plaintiff's claim for additional temporary total disability benefits and additional medical treatment "during the continuance of her unjustified refusal of suitable work." Plaintiff's "Motion to Reconsider Decision," filed 12 August 1997, was denied by the Commission.

---

The dispositive issue is whether SCT rebutted Plaintiff's presumption of continuing disability.

Initially, the injured employee has the burden of establishing the existence and extent of her disability. *Smith v. Sealed Air Corp.*, 127 N.C. App. 359, 361, 489 S.E.2d 445, 446 (1997). "Disability" is defined as the "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C.G.S. § 97-2(9) (Supp. 1997). Once disability has been established, the employee is "cloaked in the presumption of disability, and the burden [is] on the employer to rebut that presumption." *Saums v. Raleigh Community Hospital*, 346 N.C. 760, 764, 487 S.E.2d 746, 750 (1997). The employer may rebut the presumption of continuing disability "through medical and other evidence," *In re Stone v. G & G Builders*, 346 N.C. 154, 157, 484 S.E.2d 365, 368 (1997); *Harrington v. Adams-Robinson Enterprises*, 349 N.C. 218, 504 S.E.2d 786 (1998) (*per curiam*), including evidence "that suitable jobs are available to the employee and 'that the [employee] is capable of

getting one,' taking into account the employee's 'age, education, physical limitations, vocational skills, and experience,' " *Smith*, 127 N.C. App. at 361, 489 S.E.2d at 447 (quoting *Franklin v. Broyhill Furniture Industries*, 123 N.C. App. 200, 206, 472 S.E.2d 382, 386, *cert. denied*, 344 N.C. 629, 477 S.E.2d 39 (1996)). "[M]ere proof of a return to work is insufficient to rebut the . . . presumption," because "*capacity to earn* is the benchmark test of disability." *Kisiah v. W.R. Kisiah Plumbing*, 124 N.C. App. 72, 81, 476 S.E.2d 434, 439 (1996), *disc. review denied*, 345 N.C. 343, 483 S.E.2d 169 (1997). Furthermore, the employer may *not* rebut the presumption of continuing disability by showing that the employee is capable of earning pre-injury wages in a temporary position, *Daughtry v. Metric Construction Co.*, 115 N.C. App. 354, 358, 446 S.E.2d 590, 593, *disc. review denied*, 338 N.C. 515, 452 S.E.2d 808 (1994), or by creating a position within the employer's own company which is "not ordinarily available in the competitive job market," *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 438, 342 S.E.2d 798, 806 (1986), because such positions do not accurately reflect the employee's *capacity to earn* wages. "The Workers' Compensation Act does not permit [defendants] to avoid [their] duty to pay compensation by offering an injured employee employment which the employee under normally prevailing market conditions could find nowhere else and which [defendants] could terminate at will or . . . for reasons beyond [their] control." *Id.* at 439, 342 S.E.2d at 806; *Saums*, 346 N.C. at 765, 487 S.E.2d at 750 (reversing because there was "no evidence that employers, other than defendant, would hire plaintiff to do a similar job at a comparable wage"); *Smith*, 127 N.C. App. at 362, 489 S.E.2d at 447 (noting that "the employer must come forward with evidence that others would hire the employee 'to do a similar job at a comparable wage' ").

In this case, the Commission determined that Plaintiff was entitled to compensation for the "significant aggravation of [her] pre-existing injury to her shoulder" from 1 October 1990 until 24 October 1990, "and for such periods subsequent to that date which [P]laintiff may have missed from work as a result of her impingement syndrome and continuing until such time as [P]laintiff returns to work or until further orders of the [Commission]." Plaintiff was therefore entitled to a presumption of continuing disability. Plaintiff attempted to return to work with SCT on 25 October 1990 and continued working for approximately five months. Plaintiff was then out of work for six weeks due to an unrelated medical matter, but subsequently returned to work on 15 April 1991 and continued working for SCT for an additional three months. Plaintiff was unable to work after 11 July 1991

STAMEY v. N.C. SELF-INSURANCE GUAR. ASS'N

[131 N.C. App. 662 (1998)]

due to continuing shoulder pain related to her August 1990 occupational disease. Plaintiff's temporary, and ultimately unsuccessful, return to work is insufficient to rebut the presumption of continuing disability in her favor. *See* N.C.G.S. § 97-32.1 (Supp. 1997) (providing that "an employee may attempt a trial return to work for a period not to exceed nine months" without losing her right to continuing compensation);[3] *Kisiah*, 124 N.C. App. at 81, 476 S.E.2d at 439 (holding that proof of a return to work is insufficient to rebut the presumption of continuing disability). The evidence offered by SCT also revealed that the modified roller picker position offered to Plaintiff was offered as a temporary position, and evidence that an employee is capable of earning pre-injury wages in a temporary position is likewise insufficient to rebut the presumption of continuing disability. In addition, the only medical evidence in the record supports Plaintiff's claims of continuing shoulder pain. Finally, although the evidence showed that SCT offered Plaintiff a position as a modified roller picker, the record is devoid of any evidence which would support the Commission's finding of fact that the modified roller picker position is "a real position which exists in the marketplace and is not 'made work.' " *See Peoples*, 316 N.C. at 432-33, 342 S.E.2d at 803 (noting that competent evidence must support the Commission's findings of fact). SCT has therefore failed to rebut Plaintiff's presumption of continuing disability with medical evidence or with evidence that Plaintiff is capable of obtaining a suitable job in the competitive marketplace.[4] It follows from the foregoing that Plaintiff justifiably refused to accept the modified roller picker position. *See* N.C.G.S. § 97-32 (1991); *Peoples*, 316 N.C. at 444, 342 S.E.2d at 810.

Reversed and remanded.

Judges SMITH and TIMMONS-GOODSON concur.

---

3. The legislature made section 97-32.1 applicable to "claims pending on" 1 October 1994. 1993 N.C. Sess. Laws ch. 679, § 11.1(a). We note that an employee is now required to file a Form 28U to reinstate compensation if her trial return to work is unsuccessful, Workers' Comp. R. N.C. Indus. Comm'n 404A(2), 1998 Ann. R. N.C. 650; however, at the time Plaintiff attempted her return to work with SCT, this requirement did not exist, *see* Workers' Comp. R. N.C. Indus. Comm'n 404A(8), 1998 Ann. R. N.C. 652 (noting that Rule 404A is applicable to any employee who leaves work on or after 15 February 1995).

4. The Full Commission, in its "Order Denying Plaintiff's Motion to Reconsider," found that "[f]ormer Deputy Commissioner Dillard did not base his decision upon <u>Saums</u>, as the Court of Appeals had not rendered its decision when the former [d]eputy [c]ommissioner filed his Opinion and Award in this matter 31 May 1995." The Full

---

Commission further found that the deputy commissioner's decision was based on the finding that "[P]laintiff unjustifiably refused suitable employment which was generally available in the competitive labor market." As noted above, however, there was no evidence before the Commission to support this finding; it therefore cannot stand. In any event, the Full Commission clearly relied on the now-reversed Court of Appeals opinion in *Saums* in upholding the deputy commissioner's award, stating that "Plaintiff did not present evidence to rebut the presumption that this job was generally available in the competitive labor market. Saums v. Raleigh Community Hospital, 124 N.C. App. 219, 476 S.E.2d 372 (1996)." *Saums* was subsequently reversed by our Supreme Court on this ground. The law is now clear that Plaintiff was not required to present any evidence until SCT successfully rebutted the presumption of her continuing disability. *See Saums*, 346 N.C. at 763-64, 487 S.E.2d at 749 ("The employee need not present evidence at the hearing unless and until the employer, 'claim[ing] that the plaintiff is capable of earning wages, . . . come[s] forward with evidence to show not only that suitable jobs are available, but also that the plaintiff is capable of getting one, taking into account both physical and vocational limitations.' " (quoting *Kennedy v. Duke Univ. Med. Center*, 101 N.C. App. 24, 33, 398 S.E.2d 677, 682 (1990))).