**DAVIS v. EMBREE-REED, INC.**

[135 N.C. App. 80 (1999)]

━━━━━━

EDWARD DAVIS, Employee, Plaintiff v. EMBREE-REED, INC., Employer; JEFFERSON-PILOT INSURANCE CO., Carrier; Defendants

No. COA98-1395

(Filed 21 September 1999)

**1. Workers' Compensation— disability—Form 21 presumption—not rebutted**

Plaintiff's jobs as a substitute teacher and doorman lasted only a few weeks, were thus correctly found to be temporary by the Industrial Commission, and were not sufficient to rebut the presumption of disability created by a Form 21 agreement.

**2. Workers' Compensation— maximum medical improvement—sufficiency of evidence**

There was evidence to support the Industrial Commission's finding in a workers' compensation action that plaintiff had not reached maximum medical improvement where a doctor had expressed his opinion that a skin graft would be necessary for a complete healing of plaintiff's foot and had released plaintiff to work only with certain restrictions.

**3. Workers' Compensation— witness credibility—province of Industrial Commission**

The Industrial Commission did not err by deferring to plaintiff's accounts of his job location efforts; this was a matter of witness credibility within the sole province of the Commission.

Appeal by defendants from Opinion and Award filed 16 June 1998 by the North Carolina Industrial Commission. Heard in the Court of Appeals 24 August 1999.

**DAVIS v. EMBREE-REED, INC.**

[135 N.C. App. 80 (1999)]

*Cox, Gage & Sasser, by Charles McB. Sasser, for plaintiff-appellee.*

*Morris, York, Williams, Surles & Barringer, by G. Lee Martin, for defendant-appellants.*

GREENE, Judge.

Embree-Reed, Inc. (Employer) and Jefferson-Pilot Insurance Company (Carrier) (collectively Defendants) appeal from the Opinion and Award of the North Carolina Industrial Commission (Commission) awarding Edward Davis (Plaintiff) benefits for temporary total disability and temporary partial disability.

Plaintiff sustained a compensable injury when a 120-pound drill was dropped onto his left foot on 18 April 1994. A Form 21 agreement, executed by all the parties, was approved by the Commission on 23 June 1994 wherein Defendants agreed to pay compensation to Plaintiff for "necessary weeks." Subsequently, Defendants filed a Form 24, Application to Terminate Benefits, alleging Plaintiff was no longer disabled within the meaning of the Workers' Compensation Act (the Act).

In an Opinion and Award by Chairman J. Howard Bunn, Jr., filed on 16 June 1998, the Full Commission rejected[1] the Form 24 application and ordered Defendants to pay Plaintiff temporary total disability compensation from 25 September 1996 to 1 April 1997 and temporary partial disability compensation from 2 April 1997 until further orders of the Commission. In support of the Award, the Commission entered the following pertinent Conclusions of Law:

> 1. . . . In order to rebut the Form 21 presumption, the [D]efendants had the burden in proving that there was suitable work available to the [P]laintiff that the [P]laintiff could obtain with due diligence. Defendants have failed to sufficiently or convincingly meet [their] burden in proving that [P]laintiff is no longer disabled as a result of the April 18, 1994 compensable injury by accident for the time period from September 25, 1996 to April 1, 1997. Plaintiff's earnings in temporary jobs as a substitute teacher and a laborer at the Blue Rodeo was not sufficient or convincing

---

1. The Commission did approve the Form 24 application "with regard to suspension of benefits for the time period," while Plaintiff was incarcerated. This, however, is not an issue on appeal and is not addressed in the opinion.

proof to successfully rebut the presumption of [P]laintiff's temporary total disability during this time period.

The Commission entered the following pertinent Findings of Fact:

3. Between April 18, 1994 and January 25, 1995, [P]laintiff underwent three surgeries . . . on his left foot . . . .

4. On January 25, 1995, . . . [Plaintiff was released] to return to work with . . . [some] restrictions . . . . At that time, Dr. [Thomas C.] Freidrich thought [P]laintiff had reached maximum medical improvement with regard to his left foot.

. . . .

8. On September 25, 1996, Dr. [Ronald C.] Gaylon released [P]laintiff to return to work. Dr. Gaylon's September 25, 1996 medical record is inherently contradictory as to whether P]laintiff had been released without restrictions. In light of the re-evaluation of [P]laintiff's left foot by Dr. Freidrich discussed below as well as the fact that Dr. Gaylon knew that Dr. Freidrich had given [P]laintiff a twenty percent disability rating to his left foot, the undersigned find that Dr. Gaylon intended to release [P]laintiff with the restrictions set forth by Dr. Freidrich on January 25, 1995.

. . . .

10. On February 11, 1997, Dr. Freidrich re-evaluated [P]laintiff's left foot, and he was . . . of the opinion that a skin graft over the wound . . . would allow this area to heal completely. Dr. Freidrich was still of the opinion that [P]laintiff continued to be able to only do work with restrictions. . . .

11. Plaintiff had not reached maximum medical improvement with regard to his left foot injury.

. . . .

15. From April 18, 1994 through the date of the . . . hearing in this matter, [P]laintiff was only able to obtain temporary jobs . . . . Plaintiff's accounts of his job location efforts are accepted as credible and convincing . . . .

16. Defendants have not identified any suitable employment that [P]laintiff could obtain if he diligently sought such employment.

The pertinent evidence reveals that after being injured, Plaintiff underwent two surgeries, one on 25 May 1994 and one on 5 July 1994, to repair nerve damage to his injured left foot. After these surgeries, Plaintiff underwent a scar revision surgery on 20 October 1994 to repair the unhealed wound from the previous surgeries. All three of these surgeries were performed by Dr. Freidrich. On 25 January 1995, Dr. Freidrich released Plaintiff to return to work with the following restrictions: no climbing, no squatting, and no wearing of high-top boots. At that time, Dr. Freidrich thought Plaintiff had "probably" reached maximum medical improvement with regard to his left foot.

On 19 June 1995, Plaintiff returned to see Dr. Freidrich, seeking treatment for continuing problems with swelling and bleeding in his left foot. During this visit, Dr. Freidrich noted that although Plaintiff had undergone three surgeries, "unfortunately he had not done very well." He noted Plaintiff's nerves "had not yet recovered," it was "doubtful they would see much further recovery," but it "would be nice if they could get Plaintiff's wound closed." Dr. Freidrich recommended Plaintiff receive a skin graft over the open wound on his left foot in order to allow the wound to heal completely. On 31 July 1996 Dr. Gaylon performed a "surgical removal of a painful keloid scar" on the Plaintiff's left foot. Dr. Gaylon signed a medical report indicating that Plaintiff had "no work restrictions" after 25 September 1996. On that same report, he indicated that Plaintiff did have "work restrictions to prior his surgery."

On 11 February 1997, Plaintiff returned to see his original orthopedic surgeon, Dr. Freidrich, who found Dr. Gaylon's surgical procedure had left Plaintiff with "predictably bad results." Dr. Freidrich found Plaintiff had been left with a surgical wound which had not closed and remained open. He was still of the opinion a skin graft over the wound on Plaintiff's left foot would allow this exposed area to heal completely and until the healing occurred, Plaintiff could only work under the restrictions previously given.

From February 1995 to the end of April 1995 Plaintiff worked as a substitute teacher in the Gilmer County School System in Georgia. In August of 1995 Plaintiff worked two weekends as a doorman at the Blue Rodeo Bar.

The dispositive issues are whether: (I) Defendants rebutted the presumption of Plaintiff's continuing disability; and (II) there is com-

petent evidence to support the Commission's finding of fact that Plaintiff had not reached maximum medical improvement.

I

**[1]** A properly executed Form 21 agreement, approved by the Commission, entitles the employee to a presumption that he is disabled and this presumption continues until rebutted by the employer. *Franklin v. Broyhill Furniture Industries*, 123 N.C. App. 200, 205, 472 S.E.2d 382, 386, *cert. denied*, 344 N.C. 629, 477 S.E.2d 39 (1996). "The employer may rebut the presumption of continuing disability 'through medical and other evidence,'" *Stamey v. N.C. Self-Insurance Guarar. Ass'n*, 131 N.C. App. 662, 665, 507 S.E.2d 596, 599 (1998) (quoting *In Re Stone v. G & G Builders*, 346 N.C. 154, 157, 484 S.E.2d 365, 368 (1997)); *Harrington v. Adams-Robinson Enterprises*, 349 N.C. 218, 504 S.E.2d 786 (1988) (*per curiam*), "including evidence 'that suitable jobs are available to the employee and "that the [employee] is capable of getting one," taking into account the employee's "age, education, physical limitations, vocational skills, and experience." '" *Stamey*, 131 N.C. App. at 665-66, 507 S.E.2d at 599 (quoting *Smith v. Sealed Air Corp.*, 127 N.C. App. 359, 361, 489 S.E.2d 445, 446 (1997) (quoting *Franklin*, 123 N.C. App. at 206, 472 S.E.2d at 386)). The *employer may not rebut the presumption of continuing disability* by showing that the employee is capable of earning pre-injury wages in a *temporary position. Daughtry v. Metric Construction Co.*, 115 N.C. App. 354, 358, 446 S.E.2d 590, 593, *disc. review denied*, 338 N.C. 515, 452 S.E.2d 808 (1994) (emphasis added).

In this case, the parties executed a Form 21 agreement approved by the Commission, thus entitling Plaintiff to a presumption of disability. Defendants claim they met their burden of rebutting this presumption and point to the substitute teaching and doorman jobs. We disagree. These jobs lasted only a few weeks and were thus correctly found to be "temporary" by the Commission. As such, they are not sufficient to rebut the presumption of disability. Defendants presented no evidence of other job opportunities available to Plaintiff.[2]

---

2. Defendants also contend the Commission "failed to follow proper law" with respect to what evidence is necessary to rebut the Form 21 disability presumption. Although the language used by the Commission in Conclusion of Law number one does not precisely track the case law, it does constitute a fair summary of the law. Furthermore, in the absence of a clear indication that the Commission was misinformed about the law, we will assume the Commission was aware of the applicable law. *See Allen v. Allen*, 65 N.C. App. 86, 88, 308 S.E.2d 656, 658 (1983), *disc. review denied*, 310 N.C. 475, 312 S.E.2d 881 (1984) (proceedings appealed from are presumed to be correct until contrary is shown).

[2] Defendants next contend the Commission's finding that Plaintiff had not yet reached maximum medical improvement is not supported by competent evidence in the record. We disagree.

Defendant does not dispute that the Commission's findings are binding on appeal if they are supported by competent evidence. *Franklin*, 123 N.C. App. at 204, 472 S.E.2d at 385. In this case, Dr. Friedrich, after seeing Plaintiff on 11 February 1997, expressed the opinion that a skin graft was going to be necessary before a complete healing of Plaintiff's foot would occur and released Plaintiff to work only with certain restrictions. This evidence supports the finding that Plaintiff had not reached maximum medical improvement.

[3] Defendants finally contend that the Commission erred in deferring to Plaintiff's "accounts of his job location efforts." This is a matter of witness credibility and is within the sole province of the Commission. *Id.* (Commission may reject all or part of any witness's testimony); *Watkins v. City of Asheville*, 99 N.C. App. 302, 303, 392 S.E.2d 754, 756, *disc. review denied*, 327 N.C. 488, 397 S.E.2d 238 (1990) (Commission may assign more credibility and weight to certain testimony than other testimony); *Church v. Mickler*, 55 N.C. App. 724, 733, 287 S.E.2d 131, 136 (1982) (credibility of witness to be resolved by the fact finder).

Affirmed.

Judges TIMMONS-GOODSON and HORTON concur.