Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties through the Pre-trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers Compensation Act.
2. Plaintiffs alleged date of injury is 3 March 1994.
3. On 3 March 1994 the employee-employer relationship existed between the parties.
4. The City of Raleigh is self-insured.
5. Plaintiffs compensation rate is $347.83.
 ***********
Based upon the competent evidence of record, the Full Commission rejects the findings of the Deputy Commissioner and makes the following additional:
 FINDINGS OF FACT
1. Plaintiff is a male who was born on 16 September 1942. He completed the ninth grade and has no special skills other than on-the-job training. Plaintiff has experience operating equipment such as a backhoe and has a commercial drivers license. Plaintiff was employed by defendant as an Equipment Operator II. His primary job duty for the City of Raleigh was the operation of a backhoe, and he worked on a crew which usually consisted of five workers, including two workers assigned solely to physical labor.
2. On 3 March 1994, plaintiff sustained an admittedly compensable injury by accident to his right shoulder which arose out of and in the course of his employment with defendant when he attempted to lift a water main pipe off the back of a truck. This type of labor was not part of plaintiffs regular duties or normal work routine. Plaintiff is right-handed. This injury was the subject of a Form 21 agreement and two subsequent Form 26 agreements. A Form 28T Notice of Termination of Compensation by Reason of Trial Return to Work dated 15 July 1996, was filed with the Commission. No Form 28U Employees Request that Compensation be Reinstated After Unsuccessful Trial Return to Work has been filed.
3. The nature of plaintiffs injury was an impingement syndrome of the right shoulder, with tendinitis and bursitis. Plaintiff presented to orthopedist Dr. George Benedict. Following unsuccessful conservative treatment, plaintiff underwent a right shoulder arthroscopy.
4. Plaintiff continued to have pain without much improvement after surgery. On 24 April 1995, plaintiff presented to Dr. Kevin Paul Speer, an orthopedic specialist at Duke University Medical Center. Following Dr. Speers examination, he found plaintiff to be suffering from a right shoulder impingement, a possible rotator cuff tear, and acromioclavicular arthritis. Dr. Speer scheduled a right shoulder arthroscopy with an open rotator cuff tear and distal clavicle resection. On 19 May 1995, Dr. Speer performed a second shoulder arthroscopy, and removed the end of plaintiffs collar bone and some scar tissue.
5. Plaintiff did not experience any complications following his 19 May 1995 surgery; however, Dr. Speer testified that plaintiff never attained full, normal function and strength, and he continued to have quite a bit of pain and discomfort. Dr. Speer tried several means of conservative treatment, including injections, oral medicines, narcotics, activity moderations, writing plaintiff out of work and changing his work status; however, nothing affected plaintiffs continuing pain. Plaintiff collected workers compensation for some period of time, then on 21 August 1995, he attempted a return to work upon defendants request. During this period, plaintiff returned to his pre-injury wages and was not paid compensation pursuant to the Form 21 agreement. Although plaintiff ostensibly returned to his previous job, he was only required to perform minor tasks, ride around with his co-workers, or stay at the shop. When plaintiff attempted to operate a backhoe, he was unable to so for more than an hour. Thereafter, he stood and watched while his supervisor finished the job. Plaintiff received his pre-injury wages in this employment; however, because the job was so modified to fit plaintiffs limited work capacity, this employment was make work and did not constitute a suitable job which was readily available in the competitive market place. Plaintiffs earnings in this modified job were not indicative of his wage earning capacity.
6. Dr. Speer found plaintiff had reached maximum medical improvement as of 24 January 1996. On 1 February 1996, Dr. Speer released plaintiff to return as needed, and assigned plaintiff a rating of 10% permanent partial impairment to the right shoulder. There is no evidence that defendant paid plaintiff for his permanent partial disability rating. Dr. Speer also imposed work restrictions of no lifting more than 20 pounds intermittently to a maximum of two hours per day, and no more than intermittent climbing for a maximum of one hour per day.
7. On 11 March 1996, plaintiff returned to see Dr. Speer with complaints of increased shoulder pain, particularly in the afternoon and evening. Dr. Speer prescribed medication and wrote plaintiff out of work for two weeks. On 19 March 1996, the parties executed a Form 26 Supplemental Agreement as to Payment of Compensation, agreeing to pay plaintiff temporary total disability compensation beginning on 11 March 1996 and continuing for "necessary weeks. On 22 March 1996, defendants filed a Form 28T terminating plaintiffs compensation as of 15 March 1996, based upon a trial return to work.
8. On 27 May 1996, plaintiff returned to Dr. Speer with complaints of pain in the shoulder area and over his biceps. Although the bicep area was different from the shoulder, Dr. Speer testified and the Full Commission finds as a fact that plaintiffs bicep condition was causally related to the same impingement syndrome. Dr. Speer ordered an MRI of plaintiffs right shoulder and bicep.
9. The MRI confirmed a medial biceps subluxation, which Dr. Speer determined required an open biceps tenodesis. On 2 July 1996, Dr. Speer performed the additional surgery on plaintiffs right shoulder and arm. He removed the biceps tendon attachment to the shoulder and attached it further down the arm. On 9 July 1996, the parties executed a second Form 26 Supplemental Agreement as to Payment of Compensation, agreeing to pay plaintiff temporary total compensation from 2 July 1996 for "necessary weeks. A Form 28T terminating those benefits by reason of a trial return to work was filed by defendants on 15 July 1996, effective on 11 July 1996.
10. Following his 2 July 1996 surgery, plaintiff returned to work for defendant and again was limited in his activities due to his shoulder injury. On 10 July 1996 Dr. Speer filled out a work restriction form which limited plaintiff to lifting no more than 0-10 pounds and no lifting with his right arm at all, no climbing, and only intermittent bending, squatting, kneeling and twisting for up to two hours per day. Plaintiff could not drive any type of motor vehicle, or work above his shoulder with his right arm. When plaintiff returned to work he was not assigned any specific duties and no longer drove a backhoe. His activities were limited to minor janitorial tasks or watching others work. Plaintiffs job duties were so modified that they constituted make work. Defendant never offered plaintiff a position with duties within the restrictions set by Dr. Speer which would constitute a suitable job of the type available in the competitive marketplace.
11. When plaintiff attempted to return to work following the 2 July 1996 surgery, he suffered a great deal of verbal abuse from his co-employees because he could not perform his job. Some of these incidents evolved into altercations for which plaintiff received written reprimands. Fearing that he would eventually be fired as a result of the reprimands, plaintiff retired from defendants employ effective 1 October 1996. At that time, he had a full thirty years of service.
12. Prior to his date of injury and continuing through the hearing date before the Deputy Commissioner, plaintiff operated a small tire business out of the garage at his home. The business involves selling and mounting tires. Plaintiff testified that his customer volume has always been between zero to possibly three or four a day, and that at times days would go by without any business. He has a neighbor who comes over every evening and assists with the physical operation of the business, and at times since his injury plaintiff has had the customers change their own tires.
13. Plaintiffs income derived from his tire business before and after his injury constituted wages from concurrent employment. Plaintiffs income from his concurrent employment was not considered when computing his average weekly wage in the employment of injury. Defendant is not entitled to an offset against their obligation to pay compensation in the employment of injury unless plaintiffs wages from his tire business were enlarged after the injury for reasons related to the injury, for instance, due to extra time plaintiff could devote to the tire business. Defendant has not shown an enlargement of plaintiffs earning capacity in his tire business as a result of his injury. Due to the sporadic nature of this business and the fact that there is insufficient evidence to support a finding that plaintiff violated his physicians restrictions in the operation of the business, it does not constitute a return to suitable employment sufficient to overcome the presumption of plaintiffs continuing disability.
14. Plaintiff attempted to find other work after his retirement. He obtained employment with the Wake County School System for a short period of time, then attempted to work at a Goodyear store. After five days at the store, plaintiff had to quit due to continuing pain. Plaintiff also attempted to do independent yard work, but was unable to operate a weed eater or trim hedges. None of the jobs was suitable to plaintiffs physical limitations caused by his injury; therefore, defendant has failed to rebut the presumption of plaintiffs continuing disability.
15. In an office note dated 29 December 1997, Dr. Speer found plaintiff had reached maximum medical improvement from the third surgery. He gave plaintiff a 30% permanent partial disability rating to his right shoulder. On 2 January 1998, Dr. Speer issued plaintiff permanent work restrictions, including no pushing or pulling and no repetitive motion production work, no lifting more than 10 pounds, and zero climbing. Dr. Speer further testified that plaintiff can only effectively work with one hand, and for a maximum of approximately two hours per day. Dr. Speer indicated that plaintiff will always have chronic pain to some extent and will need pain medicines and medical monitoring.
16. Since reaching maximum medical improvement on 29 December 1997, plaintiff has been totally disabled as a result of his work-related injury.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On 19 June 1995, the parties submitted a Form 21 Agreement for Compensation for Disability to the Industrial Commission admitting the compensability of plaintiffs 3 March 1994 injury by accident. The Form 21 was approved by the Commission on 7 July 1995, and created a presumption of continuing disability for plaintiff. Smith v. Sealed Air Corporation,127 N.C. App. 359, 489 S.E.2d 445 (1997). Plaintiff was paid compensation pursuant to the Form 21 for the periods he was out of work until he returned to work following his 2 July 1996 surgery. When plaintiff retired on 1 October 1996 his compensation was not reinstated.
2. Defendant has failed to successfully rebut the presumption of plaintiffs continuing disability which arose upon the filing of the Form 21, and continued through the filing of each Form 26, which reaffirmed plaintiffs status of temporary total disability for "necessary weeks. SeeDancy v. Abbot Laboratories, N.C. App., 534 S.E.2d 601 (2000). None of the greatly modified jobs which defendant offered to plaintiff, or the temporary or part-time jobs plaintiff has attempted since his retirement, constitute a successful return to suitable employment accurately reflecting plaintiffs capacity to earn wages. Stamey v. NorthCarolina Self-Insurance Guar. Assn, 131 N.C. App. 662, 507 S.E.2d 596
(1998). Accordingly, plaintiff is entitled to ongoing total disability benefits beginning 1 October 1996 and continuing until he returns to work at the same or greater wages than earned at the time of his compensable injury. N.C. Gen. Stat. 97-29.
3. As a result of his compensable injury by accident of 3 March 1994, plaintiff has reached maximum medical improvement as of 29 December 1997, and has sustained a 30% permanent impairment to his right arm. Since plaintiff has been totally disabled since reaching maximum medical improvement, benefits for ongoing total disability is the most favorable remedy. N.C. Gen. Stat. 97-29.
4. As a result of his compensable injury by accident of 3 March 1994, plaintiff continues to suffer from pain and will need periodic medical monitoring or pain medicines. Defendant is responsible for payment for any such ongoing medical treatment as may be reasonably necessary. N.C. Gen. Stat. 97-2(19).
5. Defendant is not entitled to an offset against compensation owed to plaintiff in the amount of income earned by plaintiff in his used tire business. Under the Act, a disability is defined as an "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment. N.C. Gen. Stat.97-2(9). An employees earning capacity is "based on his ability to command a regular income in the labor market. McGee v. Estes ExpressLines, 125 N.C. App. 298, 300, 480 S.E.2d 416, 418 (1997). An employees ownership of a business can only support a finding of earning capacity if the employees actual work in the business involves skills which are marketable in the competitive labor market. Id. In this case, plaintiffs post-injury actual work activities consist primarily of obtaining used tires for resale. The evidence tends to show that he has assistance in performing any physical labor since his injury, even to the point of asking customers to change their own tires. The mere ownership by plaintiff of a used tire business does not demonstrate an ability to perform skills which are marketable; therefore, the business is not indicative of plaintiffs earning capacity.
6. Further, plaintiffs average weekly wage is determined from the employment of his injury. N.C. Gen. Stat. 97-2 (5); McAninch v. BuncombeCounty Schools, 347 N.C. 126, 489 S.E.2d 375 (1997). Plaintiff was able to continue his tire business while being totally disabled from work in his job of injury with defendant. Therefore, the question presented is whether defendant, who is allowed by law to disregard plaintiffs pre-injury income from his tire business for purposes of computing average weekly wage, can receive a credit for that same "disregarded income when calculating defendants obligation to pay temporary total disability compensation. The Full Commission, herein, has determined that theLarsons preferred rule should be followed. Since North Carolina does not allow aggregation of wages from concurrent employment to determine the compensation rate, wages earned in the concurrent employment will be disregarded in computing partial disability, unless the concurrent employment is enlarged as a substitute for loss of earnings in the employment of injury. 2 Larsons Workers Compensation Law, Section 60.31(g).
7. Plaintiffs retirement for reasons unrelated to his disability do not affect defendants obligation to pay continuing total disability. The issue is whether plaintiff, subsequent to his retirement, has lost wage earning capacity. The Full Commission finds that plaintiff has lost wage earning capacity due to the compensable injury while in defendants employ; therefore defendant remains obligated to pay indemnity compensation. Stroud v. Caswell Center, 124 N.C. App. 653, 478 S.E.2d 234
(1996).
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay plaintiff ongoing total disability compensation in the amount of $347.83 per week beginning 1 October 1996 and continuing under further order of the Industrial Commission. The amount of compensation which has accrued as of the date of this Award shall be paid in a lump sum, subject to the attorney fee approved below.
2. Defendant shall continue to provide any reasonably necessary medical treatment for plaintiffs injury sustained on 3 March 1994.
3. A reasonable attorneys fee of 25% of the compensation awarded plaintiff herein is approved for plaintiffs counsel and shall be paid as follows: 25% of the lump sum owed to plaintiff shall be paid directly to plaintiffs counsel. Thereafter, every fourth payment pursuant to Paragraph 1 shall be paid directly to plaintiffs counsel.
4. Defendant shall pay the costs.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER