***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, the Full Commission affirms in part and modifies in part the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Casualty Reciprocal Exchange is the carrier on risk.
4. Plaintiff's average weekly wage is $454.50, yielding a compensation rate of $303.01.
5. Defendants accepted the compensability of plaintiff's claim on a Form 21 Agreement for Compensation approved by the Industrial Commission on October 23, 1997. Defendants subsequently submitted a Form 26 approved by the Commission on July 22, 1998. Pursuant to those agreements, plaintiff received the following compensation:
 a. Partial disability compensation from January 24, 1997 through July 6, 1997 totaling $2,997.76.
 b. Total disability compensation from July 7, 1997 through September 7, 1997.
 c. Total disability compensation from December 26, 1997 through April 26, 1998.
 d. Partial disability compensation from April 27, 1998 through May 31, 1998 totaling $1,188.41.
 e. Total disability compensation from June 1, 1998 through September 20, 1998.
 f. Partial disability compensation from September 21, 1998 through December 3, 1998 totaling $2,669.77.
 g. Total disability compensation from December 4, 1998 and continuing through the present.
6. Plaintiff's medical records were stipulated into evidence as Stipulated Exhibit 1.
7. The issue before the Commission is whether plaintiff's compensation should be suspended or terminated, and, if so, as of what date.
 ***********
The Full Commission modifies the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was thirty-three (33) years old and had a sixth grade education. Plaintiff's previous work history includes construction, house painting and working as a gas station attendant.
2. Plaintiff's job duties with defendant-employer included driving a wrecker truck, pumping gas, dispatching a wrecker, operating the cash register and occasional mechanic work.
3. Plaintiff sustained an admittedly compensable injury to his back on January 17, 1997 while putting a transmission into a wrecker.
4. Plaintiff received treatment from orthopedist Dr. Mark Rodger for a herniated disc at L-5, S-1 and Dr. Rodger performed a microdiscectomy at L-5, S-1 on July 7, 1997.
5. Plaintiff returned to work for defendant-employer in September 1997 and worked intermittently through December 1997. Plaintiff suffered a recurrent disc rupture requiring a repeat microdiscectomy in association with a post lumbar interbody fusion using BAK cages. Dr. Rodger performed this procedure on January 20, 1998. Plaintiff suffered a dural tear during this surgical procedure and had a postoperative CSF leak which subsequently was repaired.
6. Following surgery, plaintiff worked at defendant-employer during April and May 1998 and late September through early December 1998, for which periods defendants have already paid compensation. Defendants have paid total disability compensation to plaintiff since December 4, 1998.
7. During the course of treatment with Dr. Rodger, plaintiff was prescribed several medications, including strong narcotics that caused various adverse side effects including potential for addiction, decreased ability to make judgments, and sedation.
8. Plaintiff continued to suffer from chronic pain in his back and leg despite the numerous medications he was taking. Therefore, Dr. Rodger referred him for treatment at the Center for Pain Management.
9. Plaintiff began treatment with Dr. Paul Chipley at the Center for Pain Management on June 22, 1998. Dr. Chipley prescribed various medications including Methadone and Clonidine.
10. Plaintiff underwent a functional capacity evaluation on February 16, 1999 which showed in part that plaintiff was unable to bend, kneel, squat or crouch. Plaintiff has further restrictions of no sitting or standing longer than 30 minutes, no lifting greater than 20 pounds and no working in awkward positions. Plaintiff also has non-exertional factors of limited concentration and limited interaction with others due to his ongoing pain.
11. On February 26, 1999 plaintiff reached maximum medical improvement, retaining a 30% permanent partial impairment to his back. Dr. Rodgers recommended vocational assessment and retraining for plaintiff, since plaintiff was unable to return to work in the position he had prior to the injury by accident.
12. In February 1999 defendant-employer offered plaintiff a position as cashier and dispatcher. Defendants prepared a written job description which showed the job did not require any climbing, bending, kneeling, squatting, pushing or pulling. However, Wayne Peters, the owner of defendant-employer, testified that the person who normally performed the job offered to plaintiff occasionally had to check the oil in vehicles, repair tires, fill windshield wiper fluid, and provide assistance at the full-service pump. Mr. Peters admitted that no other person with plaintiff's restrictions would be hired for this job. Plaintiff did not return to work in this proffered position.
13. Plaintiff began exhibiting symptoms of depression including difficulty sleeping, loss of appetite, marital discord and feeling "at the end of his rope." Dr. Chipley recommended psychological counseling, but this treatment was denied by defendant-carrier.
14. Dr. Chipley referred plaintiff to another doctor in his practice, Dr. Francisco Naveira, for evaluation and recommendation regarding the implantation of a spinal cord stimulator.
15. Plaintiff underwent a psychological assessment by Dr. Richard Campbell on November 17, 2000. Dr. Campbell stated that plaintiff was a suitable candidate for the spinal cord stimulator. Dr. Campbell recommended cognitive behavioral pain management due to his assessment of plaintiff's mood as being moderately depressed and anxious, secondary to his pain condition and associated lifestyle changes. This recommended treatment was denied by defendant-carrier.
16. Plaintiff underwent a successful trial of the spinal cord stimulator, and subsequent permanent implantation of a spinal cord stimulator.
17. Plaintiff's medical treatment was then transferred to Dr. John Knab, another doctor at the Center for Pain Management.
18. Plaintiff is required to turn off his spinal cord stimulator when driving. Once the stimulator is turned off, plaintiff's pain relief diminishes rapidly.
19. Defendant-carrier assigned a vocational rehabilitation professional, Cindy Perkins, to plaintiff's claim in June of 1999. Ms. Perkins' role was to assist with job placement, as plaintiff was unable to return to his previous employment with defendant-employer.
20. Ms. Perkins recommended that plaintiff obtain his GED. Plaintiff attempted to do this, but was unsuccessful in this attempt due to his pain and inability to comprehend the material that was being taught. Plaintiff would have to take classes for his GED for at least two to three years in order to make up the five-year deficit in his education. Plaintiff remained in the seventh grade for three years and did not complete that grade level in school before he left school at age 16. Plaintiff's ability to read and write and understand math is very limited.
21. Ms. Perkins recommended that plaintiff obtain a CDL license. Because of the expense of obtaining this license, plaintiff requested payment by defendant-carrier, but the request was denied.
22. Ms. Perkins discussed with plaintiff the need to wear appropriate attire when submitting applications. The evidence showed that plaintiff did wear appropriate attire as was evidenced by the testimony of Greg Mowrey, a prospective employer to whom plaintiff submitted an application. Ms. Perkins never went with plaintiff to a job interview and had no firsthand knowledge of what he wore to interviews. In the two years Ms. Perkins worked with plaintiff, he submitted over 50 job applications and had only one job interview.
23. As the result of the compensable injury by accident, since December 4, 1998 plaintiff has been incapable of earning wages in any suitable employment with defendant-employer or any other employer.
24. During the period Ms. Perkins worked with plaintiff, on two occasions plaintiff lost control of his temper and was verbally abusive to Ms. Perkins.
25. Plaintiff has requested that defendants pay for his prescription drugs Prevacid and Clonidine. The evidence of record shows that, according to Dr. Chipley, Clonidine is necessary in the treatment of plaintiff's pain condition as an adjunct to his pain medication. Although plaintiff takes Prevacid for gastroesophageal reflux, there is no evidence of record that this condition is causally related to the compensable injury by accident.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On January 17, 1997, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. As a result of this compensable injury by accident, plaintiff has received partial disability compensation and continues to receive total disability compensation. N.C. Gen. Stat. §§ 97-29, -30.
3. Plaintiff has an ongoing presumption of disability based upon the Form 21 Agreement approved by the Commission on October 23, 1997. Kisiahv. W.R. Kisiah Plumbing, 124 N.C. App. 72, 476 S.E.2d 424 (1996), disc.review denied, 345 N.C. 343, 483 S.E.2d 169 (1997); Franklin v. BroyhillFurniture Industries, 123 N.C. App. 200, 472 S.E.2d 382, cert. denied,344 N.C. 629, 477 S.E.2d 39 (1996). After the presumption attaches, the burden shifts to the defendants to come forward with evidence that plaintiff is employable by showing that the employee is capable of earning the same wages as before the injury or by showing the employee's capacity to earn lesser wages than before the injury. Franklin v. BroyhillFurniture Industries, supra. The employer may rebut the presumption of disability by showing that the employee has unjustifiably refused suitable employment. N.C. Gen. Stat. § 97-32; Franklin v. BroyhillFurniture Industries, supra.
4. The job of dispatcher/cashier offered to plaintiff by defendant-employer as described by Mr. Peters was not within plaintiff's restrictions of no bending, stooping, kneeling or squatting. The written job description prepared by defendants did not accurately reflect the actual job duties required by this position. The position as shown on the written job description is so modified from the regular job requirements as to constitute make work under the law. Mr. Peters admitted that no one with plaintiff's work restrictions would be hired for the position. Therefore, plaintiff's refusal to perform the proffered job was justified. N.C. Gen. Stat. § 97-32; Peoples v. Cone MillsCorp., 316 N.C. 426, 342 S.E.2d 798 (1986); Stamey v. N.C. Self-InsuranceGuar. Ass'n, 131 N.C. App. 662, 507 S.E.2d 596 (1998).
5. Defendants failed to rebut plaintiff's presumption of continuing disability. Therefore, plaintiff is entitled to continue to receive total disability compensation at the rate of $303.01 per week until plaintiff returns to work or until further order of the Commission. N.C. Gen. Stat. § 97-29.
6. Plaintiff is entitled to have defendants provide all medical compensation arising from this compensable injury by accident. The approved medical expenses include payment for the prescription drug Clonidine so long as it is deemed necessary by plaintiff's physicians. Plaintiff is to be evaluated by his treating physician to determine whether psychological treatment is appropriate. Should his treating physician recommend psychological treatment, defendants shall pay for this treatment. N.C. Gen. Stat. § 97-25.
7. Plaintiff is entitled to have defendants provide vocational assessment and retraining, as recommended by Dr. Rodger. Vocational rehabilitation is to be in full compliance with the North CarolinaIndustrial Commission Rules for Utilization of RehabilitationProfessionals.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff shall continue to receive total disability compensation at the rate of $303.01 per week until he returns to work or until further order of the Commission.
2. A reasonable attorney's fee of twenty-five percent of compensation due plaintiff under Paragraph 1 of this AWARD is approved for plaintiff's counsel. Plaintiff's counsel shall receive the equivalent of every fourth check.
3. Defendants shall continue to pay for medical treatment relating to plaintiff's compensable injury by accident as prescribed by his treating physician, including the prescription drug Clonidine. Defendants shall pay for psychological care in the event that such treatment is recommended by plaintiff's treating physician.
4. Plaintiff is ordered to use good faith efforts to comply with any vocational rehabilitation and retraining offered by defendants. Failure to comply with vocational rehabilitation shall result in suspension or termination of plaintiff's benefits. N.C. Gen. Stat. §§ 97-18.1, -25. Because of the conflict that developed between plaintiff and Ms. Perkins, it can reasonably be inferred that the working relationship between the two parties has deteriorated and should not be continued. Therefore, defendants shall replace Ms. Perkins with another rehabilitation professional.
5. Defendants shall pay the costs.
This the ___ day of July 2002.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN