* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. Accordingly, the Full Commission affirms, with modifications, the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer. *Page 2 
3. The carrier liable on the risk is correctly named above.
4. Plaintiff's average weekly wage is $377.72, yielding a compensation rate of $251.83 per week.
5. On or about October 27, 2005, plaintiff sustained an injury.
6. The injury arose out of an in the course of employment and is compensable.
7. Dr. Stephen David and Dr. Maher F. Habashi are expert witnesses and, upon proper hypothetical questions, would testify that the medical conditions they treated or evaluated, the work restrictions they imposed, and the disability ratings they assigned were a direct result of plaintiff's work-related injury. Therefore, no depositions are needed.
8. The issues to be decided are as follows:
 a. Whether defendants have provided suitable employment to plaintiff?
 b. Whether plaintiff is entitled to temporary disability compensation beginning December 4, 2006, when she was out of work for appendicitis?
 c. What amounts of compensation are due plaintiff?
 d. Whether defendants should be sanctioned for unreasonable defense of this action under N.C. Gen. Stat. § 97-88.1?
 * * * * * * * * * * * EXHIBITS
The following exhibits are received and admitted for the purposes specified.
Stipulated Exhibits:
 1. Pre-trial
 2. Industrial Commission Forms
 3. Plaintiff's discovery responses *Page 3 
 4. Defendants' discovery responses
 5. February 23, 2006 letter to plaintiff's counsel from a representative of defendant-adjusting agent
 6. Records from plaintiff's treatment with Dr. Bill Vassen, Burke Occupational Health
 7. Records from plaintiff's treatment with Burke Physical Therapy
 8. Records from plaintiff's treatment with Dr. Stephen David, Blue Ridge Bone Joint Clinic
 9. Plaintiff's evaluation from Dr. Maher F. Habashi, Diplomate of the American and Canadian Boards of Orthopedic Surgery
 10. Defendant-adjuster's payment history related to plaintiff's claim
 * * * * * * * * * * *
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 59 years of age. Plaintiff worked as a temporary employment agency worker for defendant beginning on February 21, 2005, in which she was assigned to various businesses for varying lengths of time. The businesses pay defendant-employer for plaintiff's work, and defendant-employer pays a portion of the fee they charge to plaintiff and retains the remainder.
2. On October 27, 2005, plaintiff sustained an admittedly compensable injury while assigned to Valdese Weavers. Plaintiff injured her neck, back and left knee and leg when she fell while attempting to stop a tugger/scooter. *Page 4 
3. Plaintiff presented to Burke Occupational Health and was placed on numerous work restrictions.
4. On December 14, 2005, plaintiff presented to Dr. Stephen David, an orthopaedic surgeon in Asheville. Dr. David performed MRI scans of the cervical spine that revealed multilevel cervical spondylosis, C4-5, C5-6, and C6-7, with C6-7 appearing worse. The MRI scan also revealed "signal changes C2 at the odontoid." In addition multilevel disc bulges at C4-5, C5-6 and C6-7 appeared.
5. A January 9, 2006 MRI revealed questionable traumatic injury at the C1/2 spine level. Dr. David did not consider plaintiff a surgical candidate. On June 20, 2006, Dr. David opined that plaintiff had an exacerbation of cervical spondylosis after her work injury. At this time, Dr. David released plaintiff at maximum medical improvement and assigned permanent work restrictions: "full time work modified duty on a permanent basis with limited bending, stooping or twisting. No lifting, pushing or pulling more than 10 lbs. Allow to alternate sitting and standing. No overhead work." Dr. David assigned a 2% back rating for exacerbation of the cervical spondylosis.
6. On November 9, 2006, plaintiff presented to Dr. Maher Habashi, also an orthopaedic surgeon, for a second opinion. Dr. Habashi opined plaintiff has a 12% back rating as a result of her work injury.
7. Defendant-employer was able to accommodate plaintiff with work within the work restrictions set by the approved doctors only part of the time prior to Dr. David's finding that she was at maximum medical improvement. *Page 5 
8. Beginning on June 7, 2006, defendant-employer directed plaintiff to report to the Burke County Museum for a volunteer job. Defendants paid plaintiff her pre-injury income despite the Museum paying defendant-employer nothing for plaintiff's services.
9. Melissa Mitchell, a regional customer service manager for defendant-employer testified that defendant-employer has a policy of "trying to keep the plaintiff active." Ms. Mitchell admitted defendant-employer, which has four locations in North Carolina, and several in Tennessee has been unable to find suitable employment within the doctors' restrictions for the plaintiff.
10. At the hearing before the Deputy Commissioner, plaintiff testified that she spends 36 hours per week at the Museum. Much of the plaintiff's workday consists of watching television (which she estimated she does 20-30% of the day), playing solitaire on a computer (10% of the day) and reading magazines such as Our State and Glamour. There are many days when no visitors come to the Museum. She answers the telephone perhaps ten times daily and occasionally dusts. The Museum has instructed her not to do any lifting, which would normally be part of the volunteer job.
11. At the hearing before the Deputy Commissioner, plaintiff testified that she continued to be employed with defendant-employer but was not working as defendants were unable to find suitable employment within the doctors' restrictions. Defendants have not presented any evidence that suitable employment within plaintiff's restrictions was identified or available.
12. Based on the greater weight of the evidence, the Full Commission finds that the volunteer job at the Museum is not available in the competitive job market but rather a "make work" position and therefore is not suitable employment. *Page 6 
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff was not obligated to accept the Museum job, which was not ordinarily available in the competitive job market. Peoples v. ConeMills Corp., 316 N.C. 426, 342 S.E. 2d 798 (1986). The employer may not rebut the presumption of continuing disability by showing that the employee is capable of earning pre-injury wages in a temporary position or by creating a position within the employer's own company that is not ordinarily in the competitive job market, because such positions do not accurately reflect the employee's capacity to earn wages. Stamey v.North Carolina Self-Insurance Guar. Ass'n, 131 N.C. App. 662,507 S.E.2d 596 (1998).
2. Since the position offered by defendants was a make work job, not ordinarily available in the competitive job market, it was not a suitable position. Peoples v. Cone Mills Corp., 316 N.C. 426, 438,342 S.E.2d 798, (1986). As such, plaintiff did not unjustifiably refuse suitable employment when she did not return to the volunteer position. N.C. Gen. Stat. § 97-32.
3. Plaintiff is entitled to temporary total compensation beginning December 4, 2006, since defendants had no suitable work for her and she did not refuse suitable employment. N.C. Gen. Stat. § 97-32.
4. Defendants' contention that the unpaid volunteer job is suitable employment is not a reasonable defense and the defendants should be sanctioned under N.C. Gen. Stat. § 97-88.1 with additional attorney fees for plaintiff's counsel. N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * * *Page 7 
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee hereinafter approved, defendants shall pay temporary total disability compensation to plaintiff at the rate of $251.83 per week, beginning December 4, 2006, and continuing until further order of the Commission, subject to credit for any partial payments previously made to plaintiff.
2. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her compensable injury for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief or may tend to lessen the plaintiff's period of disability.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded plaintiff in Paragraph 1 of this Award is approved for plaintiff's counsel.
4. For the unreasonable defense of this claim, defendants shall pay an additional attorney's fee to plaintiff's counsel in the amount of $2000.00 pursuant to N.C. Gen. Stat. § 97-88.1.
5. Defendants shall pay the costs.
This the ___ day of November 2007.
S/______________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/______________________ BUCK LATTIMORE COMMISSIONER
 S/______________________ CHRISTOPHER SCOTT COMMISSIONER